429 So.2d 877 (1983)
Gary Wade GIBSON, Plaintiff-Appellee,
v.
Katherine Shank GIBSON, Defendant-Appellant.
No. 82-592.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1983.
*878 Louis Cosenza, Leesville, for defendantappellant.
F. Clay Tillman, Jr., Leesville, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
Appellant seeks to have the judgment of the trial court, awarding custody of the minor child to her former husband, declared a nullity, arguing that the trial court was without jurisdiction. We agree and reverse.
A short procedural history of the case is as follows. On January 27, 1982, the trial court heard a rule for custody incidental to a petition for divorce initiated by Plaintiff-Appellee, Gary Wade Gibson. Defendant-Appellant, a non-resident, was represented by a curator. Judgment was rendered, granting custody of 19 month old Mandy Lynn Gibson to her father, Gary Wade Gibson. On February 19, 1982, the divorce was taken up and judgment rendered, granting a divorce and continuing custody of the child in Mr. Gibson. Hon. Roy B. Tuck presided at the divorce proceedings.
Mrs. Gibson filed a petition to nullify the judgments rendered January 27, 1982 and February 19, 1982 regarding custody of the child. Her petition was filed June 25, 1982 and set forth the grounds alleged for the nullity of the judgment. On August 10, 1982, she filed an amending petition, alleging that the trial court should have declined jurisdiction under the provisions of the Uniform Child Custody Act (LA-R.S. 13:1700 et seq.). Trial was fixed for September 7, 1982. Judgment was rendered the same date and signed September 9, 1982, denying Mrs. Gibson the relief sought. She now appeals, citing two specifications of error; That the Louisiana Court was without jurisdiction to decide the custody matter and, that Mrs. Gibson was denied her constitutional right to reasonable notice and right to be heard, in that 15 days before hearing is insufficient notice to a non-resident defendant.
Mandy Lynn Gibson was born in Virginia on May 15, 1980. Her father, Gary Wade Gibson, left his wife and child August 1, 1980 and returned to his home state of Louisiana, where he has lived since that time. Mandy and her mother remained in Virginia.
On Christmas Eve, December 24, 1981, Mr. Gibson and his sister arrived at Hampton, Virginia, where they mounted a surveillance of Mrs. Gibson's residence. They watched the residence of Mrs. Gibson for an undetermined length of time. Mr. Gibson testified at the custody hearing that he determined from his observations that Mrs. Gibson and Mandy were living with one Mike Lewis in an apartment in Hampton, Virginia.
On Christmas Day, 1981, Mr. Gibson visited Mrs. Gibson's residence and on the pretext of going shopping with the child, absconded with her to Louisiana.
Mr. Gibson filed his petition for divorce and custody on December 28, 1981. He alleged in his petition that Mrs. Gibson was an unfit mother because of her relationship with Mr. Lewis and further that Mrs. Gibson used drugs. A curator was appointed *879 to represent Mrs. Gibson. This attorney waived his presence at the custody hearing, although he did notify Mrs. Gibson and filed an answer. He also filed a letter received by him from Mrs. Gibson's attorney in Virginia. The letter requested that the curator move for a continuance on Mrs. Gibson's behalf, which was not done. The letter also advised that Mrs. Gibson had filed custody proceedings in Virginia. At the custody hearing, the Summons directed to Mr. Gibson by the Commonwealth of Virginia and the petition for custody filed by Mrs. Gibson were entered into evidence. The petition is dated December 30, 1981, although Mrs. Gibson's attorney indicated in his letter that the proceedings were instituted prior to December 29, 1981. The trial court spoke with the Virginia Juvenile Officer at 9:00 A.M. on the morning of the hearing.
At the trial on the nullity petition, Mrs. Gibson, now married to Mike Lewis, testified that she had in fact lived with Mr. Lewis before marrying him. She also testified that the drug overdose alleged by Mr. Gibson was the result of her having taken too many pills which had been prescribed for her as treatment for a bladder infection. She had failed to take some of them, so she took the missed pills all at one time. This appears foolish, and certainly dangerous, but it is not the type of drug abuse Mr. Gibson attempts to make it appear.
We first discuss the issue of the jurisdiction of the Louisiana Court to hear the custody matter.
Both Virginia and Louisiana are signatories to the Uniform Child Custody Act. LA-R.S. 13:1700 et seq., Va.Code 1950 §§ 20-125 to 20-146. The purpose of the act is set out in LA-R.S. 13:1700.
§ 1700. Purposes of Part; construction of provisions
A. The general purposes of this part are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child, and
(9) Make uniform the law of those states which enact it.
B. This Part shall be construed to promote the general purposes stated in this Section.
Jurisdiction in these matters is conferred by LA-R.S. 13:1702:
§ 1702. Jurisdiction
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's *880 home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
Louisiana is not the home state of Mandy Lynn Gibson [13:1702(A)(1)(i)]. She was born in Virginia and has lived there all of her short life, except after her father snatched her from her mother. She is present in this State only because of that snatching, an activity the Uniform Child Custody Act was specifically enacted to discourage. 13:1700(A)(5). Moore v. Moore, 379 So.2d 1153 (La.App. 2nd Cir.1980).[1]
Only one contestant has significant connection with La., the father; the child does not [13:1702(A)(2)(i)]. The conjunctive requirement that there be substantial evidence available in this state concerning the child's care, etc. [13:1702(A)(2)(ii)] is also lacking. The substantial evidence concerning Mandy's care would be the testimony of Mrs. Gibson's neighbors and associates in Virginia who had observed the child and her mother for 19 months. The only evidence available in Louisiana is the testimony of Mr. Gibson and his sister, which was based on their observations during their short visit in December, 1981. "Allegations concerning conditions purporting to exist in the home state" are "more appropriately and conveniently subject to the scrutiny of the courts of the domicile state." Dillon v. Medellin, 409 So.2d 570 (La.1982).
There have been no allegations or showing of abandonment of the child [13:1702(A)(3)(i)]. Indeed the mother has exhausted every effort to regain her child, including snatching her back.[2]
There was no showing of emergency, nor any allegations of abuse or maltreatment of the child such as would allow the Louisiana Court to assume jurisdiction because it would be in the best interest of the child. [12:1702(A)(3)(ii)]. To confer jurisdiction otherwise lacking, there must be a showing of immediate emergency such as abandonment, mistreatment, abuse, or neglect. Dillon v. Medellin, supra.
There is no question that another state, Virginia, would meet the criteria of the Act with regard to jurisdiction [13:1702(A)(4)(i)]. Both the child and her mother have lived there since the child's birth and all evidence concerning the child's *881 care would be there. Virginia has not declined jurisdiction, but has in fact accepted it, and had notified both the father and the court of the pendency of proceedings in that State. Since Virginia has also enacted the Uniform Child Custody Act, its jurisdictional requirements meet those of Louisiana, and Louisiana must defer to Virginia's courts. Dillon, supra; Eicke v. Eicke, 399 So.2d 1231 (La.App. 3rd Cir.1981).
For the reasons set out above, the ruling of the 30th Judicial District Court is reversed. C.C.P. Art. 3, Douglas v. Douglas, 146 So.2d 227 (La.App. 3rd Cir.1962).
We do not therefore, need to address Appellant's other assignments of error. All costs of this appeal are cast with Appellee.
REVERSED.
NOTES
[1] In Moore the "home state test" was met, giving La. jurisdiction because both mother and child resided in this state, and had for 8 months prior to custody proceeding.
[2] The child was voluntarily returned to the father prior to September 7, 1982.