394 So.2d 769 (1981)
Denise HADLEY
v.
George W. HADLEY.
No. 11643.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1981.
Rehearing Denied March 16, 1981.
*770 William H. Egan, Chalmette, for plaintiff-appellee.
Robert J. Fineran, New Orleans, for defendant-appellant.
Before SAMUEL, GULOTTA and CHEHARDY, JJ.
GULOTTA, Judge.
In this child custody case, the divorced father, a resident of Rhode Island, appeals from a judgment awarding custody of his six-year-old son to the mother, a resident of Louisiana. The father contends that the Louisiana court lacked jurisdiction under LSA-R.S. 13:1700 et seq., the Uniform Child Custody Jurisdiction Law, to modify an earlier Rhode Island decree awarding custody to him. We disagree. Accordingly, we affirm.

BACKGROUND
Denise and George W. Hadley, both residents of Rhode Island, were divorced in that state on October 8, 1976 and Denise was granted custody of their son, Eric, subject to George's visitation. Denise remarried approximately one year later and moved soon thereafter with her new husband and Eric a short distance to Seekonk, Massachusetts.
In December, 1978, Denise and Eric came to St. Bernard Parish, Louisiana. Although the record does not disclose the exact date, they returned to New England and Denise attended a visitation hearing in the Rhode Island Family Court on March 9, 1979.
On April 4, 1979, after another hearing, the Rhode Island court entered an order "transferring physical possession" of the child from Denise to George. Denise was not present at that proceeding but was represented by her attorney. According to Denise's version, although she was still in the New England area she had not been notified of the hearing. In a telephone conversation with her attorney on the night of April 4, however, her attorney told her that although the judge was "mad" because of her absence, he had not changed custody at that time. Although he informed Denise that George had "temporary possession" of the child, she understood that to mean that she could be compelled to have the child visit with the father. Denise claims that she was not given notice of any future hearings. According to Denise, she left the Rhode Island-Massachusetts area with her husband and Eric and moved to St. Bernard Parish, Louisiana in mid-April, 1979.
On April 20, 1979, in another proceeding unattended by Denise, the Rhode Island court found her to be "an unfit mother" and transferred custody of Eric to George. This finding of unfitness was based on Denise's failure to appear in the Rhode Island court and not on her unfitness as a mother to care for the child. The Rhode Island court additionally adjudged Denise in contempt and set a hearing on April 27 to show cause why she should not be incarcerated for violation of prior court orders. A written decree transferring custody to George was handed down in Rhode Island on April 23, 1979. When Denise did not appear in the Rhode Island court on April 27 as ordered, the court issued a Writ of Attachment for her. A subsequent Massachusetts warrant was issued for Denise's arrest based on her kidnapping of Eric.
On June 6, 1979, Denise was arrested in St. Bernard Parish by local authorities. The kidnapping charges were not accepted by the District Attorney in St. Bernard Parish and Denise was released. Her subsequent rule for custody of Eric in St. Bernard Parish was met by an exception filed by George to the Louisiana court's jurisdiction based on the Uniform Child Custody Jurisdiction Law in effect in Rhode Island and in Louisiana. At the hearing, where both parties were present and represented, the trial judge, on February 5, 1980, "denied" the father's exception of no cause of action and granted custody to the mother. The appeal by the father from that judgment is now before us.

*771 JURISDICTION
LSA-R.S. 13:1702 sets forth the statutory requirements concerning jurisdiction under the Uniform Law. In pertinent part, it provides as follows:
"Section 1702. Jurisdiction.
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ...."
As pointed out in Revere v. Revere, 389 So.2d 1277 (La.1980), under this statutory scheme, a competent Louisiana court has jurisdiction to determine custody or modify it in two principal situations: (1) when Louisiana is the child's home state, or (2) when the child and at least one contestant have a significant connection with Louisiana so that it is in the best interest of the child that Louisiana assume jurisdiction. As noted in Revere, the "home state" standard is based on the theory that the court of the home state is in the best position for evidence gathering and for exercising continuity of control. On the other hand, the "significant connection" standard is more flexible and based on strong contacts of the child and the contestant with the state where the proceeding is brought. This standard affords a "best interest" basis for Louisiana jurisdiction when this state has a legitimate concern as to custody and has superior access to evidence concerning the child's care, training, well being and personal relationships.
Although Louisiana, according to Revere, is not the home state, the evidence supports a conclusion that Louisiana meets the requirements of the "significant connection" standard. At the time Denise filed her rule for custody on June 11, 1979, she, her second husband and Eric had moved to St. Bernard Parish and had been residents there since April. At the time of trial, the husband was working and the family was living in Chalmette, Louisiana in a rented house with plans to build their own home. Eric, who was six years old at the time of the trial in St. Bernard, had just begun school in that parish. Denise's parents had also moved from Massachusetts and were living in New Orleans. One of Denise's brothers and his wife had also moved to Louisiana with their daughter. A younger brother and his wife were contemplating moving from New England to this state.
During her first stay in Louisiana in December, 1978, Denise and Eric had stayed with their aunt in St. Bernard Parish. Denise's father testified that his daughter and her husband had come to Louisiana to "start a new life." Admittedly, Eric was born in Rhode Island and had resided in the New England area considerably longer than the time he had spent in Louisiana, nevertheless, his mother and her new husband have established themselves in this state and the overwhelming majority of his maternal relatives now live here.
Under these circumstances we conclude that the Louisiana court had a legitimate concern, consistent with the purposes of the Uniform Child Custody Jurisdiction Law[1], *772 and had superior access to evidence concerning Eric's care, training, well being and personal relationships for the present and future. We conclude, therefore, that the Louisiana court had acquired jurisdiction under "the best interest of the child" and "significant connection" standards as set forth in LSA-R.S. 13:1702(A)(2).
In so holding, we reject the father's reliance on the wording in LSA-R.S. 13:1705 (dealing with simultaneous custody proceedings in more than one state) and LSA-R.S. 13:1706 (dealing with inconvenient forums) to defeat Louisiana jurisdiction. Although, as pointed out by George, Rhode Island initially had jurisdiction over the dispute and indeed had rendered earlier custody orders, nevertheless, there is not now pending a custody proceeding in Rhode Island and Louisiana is not an inconvenient forum. Our case is not controlled by the provisions of LSA-R.S. 13:1705 and LSA-R.S. 13:1706(C)[2] as claimed by the father, but is controlled by LSA-R.S. 13:1702(A)(2) as earlier pointed out. We note also that this result is consistent with LSA-C.C.P. article 10, which provides that a court otherwise competent has jurisdiction of a "proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state."
We also are not persuaded by George's argument that Louisiana should decline jurisdiction by reason of Denise's alleged reprehensible conduct in abducting Eric and moving to Louisiana to retain physical custody of the child in violation of the Rhode Island decree and to "shop" for a more favorable forum. In this regard, George cites LSA-R.S. 13:1707, which provides as follows:
"§ 1707. Jurisdiction declined by reason of conduct.
A. If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
B. Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.

*773 C. In appropriate cases a court dismissing a petition under this Section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses."
The evidence is conflicting as to Denise's alleged bad faith in moving to Louisiana with Eric. According to Denise's testimony, she understood that she had full legal custody of Eric when she left Massachusetts in mid-April, 1979. Although she had spoken to her attorney on April 4 and learned that George had obtained an order granting him temporary possession of the child, it was her understanding that she still retained custody subject to George's visitation. According to her testimony, she was not informed of any future trial dates in the Rhode Island family court, but would have attended them had she known. She stated that no one had ever told her about the Rhode Island court decree of April 23 which transferred custody to George and that she was in Louisiana at the time it was handed down and sought to be enforced. She indicated that she was not aware of any outstanding attachment or warrant for her arrest.
According to Denise, she removed Eric from Massachusetts in the middle of April because of fear for his safety and because of the father's threat that he would make life "miserable" for her and acquire custody of Eric. Denise's version of the events was substantially corroborated by the testimony of her father who stated that she was in Louisiana when her custody was transferred to George.
On the other hand, George testified that Denise was present in Massachusetts when he was awarded custody, and that she had refused to surrender Eric. According to George, Denise's father was present when he was awarded full and complete custody on April 24 and Denise was fully aware of the decree. George's testimony is supported in this respect by the transcript of the April 27, 1979 hearing in the Rhode Island Family Court in which Denise's attorney stated that he had talked to her and explained the decree. The circumstances of that alleged conversation or Denise's exact whereabouts at the time of it, however, are not clear from the transcript.
Confronted with this conflict in the testimony, the trial judge may very well have concluded that Denise had not abducted Eric or engaged in reprehensible conduct to evade enforcement of the Rhode Island decree. Accepting her version, the trial judge may have concluded that she had left Massachusetts in fear before George was awarded custody or that she had been ignorant of the Rhode Island hearings. A determination of the mother's conduct is largely based on decisions of credibility. Apparently the trial judge did not find irresponsible conduct on the part of the wife which would warrant a judgment depriving her of custody. We cannot say the trial judge erred.
A trial judge reaching such a conclusion is not compelled to invoke and follow LSA-R.S. 13:1707(A) which provides that in cases of wrongful taking of the child from another state or in instances of similar reprehensible conduct the court "may decline to exercise jurisdiction if this is just and proper under the circumstances." Nor is he compelled to follow the language of LSA-R.S. 13:1707(B) which requires that a court not exercise its jurisdiction to modify another state's custody decree where the petitioner has improperly removed the child from the physical custody of a person entitled to it without his consent.
We likewise reject George's contention, based on LSA-R.S. 13:1712 and 1713, that the Louisiana court was required to recognize and enforce the earlier Rhode Island decree and could not modify it. Although LSA-R.S. 13:1712 provides that a Louisiana court shall recognize and enforce an initial or modification decree of a court of another state that had assumed jurisdiction in accordance with the Uniform Law, and though LSA-R.S. 13:1713 provides that a Louisiana court shall not modify that decree unless it appears that the court initially rendering it does not now have jurisdiction under the Uniform Law or has declined *774 to assume jurisdiction to modify the decree, these statutory provisions must be read in light of the Uniform Child Custody Jurisdiction Law in its entirety.
Rhode Island, the "home state", initially had acquired jurisdiction. However, Louisiana subsequently acquired jurisdiction in the child's best interest once the child and his mother had a significant connection with this state, and there existed substantial evidence concerning his present or future care and personal relationships. LSA-R.S. 13:1702(A)(2), supra. As recognized in Revere v. Revere, supra, and Moore v. Moore, 379 So.2d 1153 (La.App. 2nd Cir., 1980) the primary or overriding purpose of the Uniform Law is to further the child's interest and well-being.[3] Although a strict application of LSA-R.S. 13:1713 would afford an orderly rule for resolving conflict in jurisdictional disputes between states on a "first come, first serve" basis, the deference by Louisiana to Rhode Island under the circumstances of our case would not be in Eric's best interest and therefore would defeat the paramount purpose of the Uniform Law. Eric's father has remained in Rhode Island, but Eric, his mother, his stepfather, maternal grandparents and aunts and uncles live here. The Louisiana court heard evidence concerning the child's past, present and future environment in both Louisiana and Rhode Island and examined the transcripts of Rhode Island hearings. To return the child to Rhode Island and require his mother to face contempt charges there in another repetitious custody proceeding would not be beneficial to the child's welfare.
As stated in Settle v. Settle, 276 Or. 759, 770, 556 P.2d 962, 968 (1976), cited in Moore v. Moore, supra, concerning the Uniform Law:
"A close reading of the Act discloses a schizophrenic attempt to bring about an orderly system of decision and at the same time to protect the best interests of the children who may be immediately before the court. When put to the test of a factual situation presenting an irreconcilable conflict between those two interests, we read the Act as making predominant the best interests of the children before the court."
Considering the entire statute, and reading its provisions in pari materiae, we conclude that the Louisiana court in Eric's best interest properly exercised jurisdiction, notwithstanding the literal wording of LSA-R.S. 13:1712 and 1713.
Now turning to the question whether the Louisiana judge properly granted custody to the mother, we are persuaded by the circumstances surrounding the child's environment at the time the matter was heard in St. Bernard Parish. Eric had just begun school in that parish at the time of the trial and was living with his mother and her second husband in Chalmette. Denise's present husband is employed full time and Denise does not work outside the home. She devotes full time to maintaining her household and caring for Eric. She drives him to and from school each day. According to Denise's testimony the child "just seems a lot more happy." His appetite has increased, he is not fearful, and he does not have "anything on his mind" as compared to his life in Massachusetts. Denise said that Eric did not want to "relate" to his father and had been upset in Massachusetts. She testified that George had called her terrible names, causing Eric to cry, and on one occasion had shoved her in front of the child. Denise stated that she has no plans for working outside the home and will be able to take care of Eric's every need.
Eric's maternal grandfather corroborated Denise's testimony concerning Eric's relationship with George. This witness related *775 that on one occasion during visitation in March, 1979 Eric had become upset when George tried to pick him up, George had shaken the child physically, and Eric had asked to go home to his mother. The grandfather added that he had been appointed "intermediator" between the Hadleys since the child would refuse to visit his father.
In contrast to this testimony, George stated that he had a good relationship with his son from the time of the divorce until September, 1978, when Denise moved to Massachusetts. At the time of trial, George was employed in Rhode Island as a railroad engineer and worked a shift from 1 a. m. to 9 a. m. He lived alone in an apartment and was a member of a Rhode Island military organization requiring his attendance at drills one weekend a month and two weeks each year. He stated that his parents, living in Rhode Island, would cooperate in taking care of Eric and that his grandmother was capable of watching the child.
Considering the evidence, we cannot say the trial judge abused his discretion when he awarded custody of Eric to his mother. LSA-C.C. art. 157; Bordelon v. Bordelon, 390 So.2d 1325 (La.1980); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979).
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
SAMUEL, J., dissents and assigns reasons.
SAMUEL, Judge, dissenting.
I agree that Louisiana is not the child's home state as found by the majority. However, I do not agree that the "significant connection" required by R.S. 13:1702(A)(2) has been met. When the mother filed the rule for custody in Louisiana on June 11, 1979, her parents had been living in this state only three weeks and she herself had moved to the state with the child only six weeks previously. The fact that one brother and his wife had also moved to Louisiana and another and his wife were contemplating moving to Louisiana is of no particular significance. On the other hand, the child's father lives and has lived for many years in Rhode Island, and this also is true as to the paternal grandparents. In addition, it is obvious that friends in both Rhode Island and nearby Massachusetts, all potential disinterested witnesses, knew the parties and the child for a much longer time than did any such witnesses in Louisiana. In my opinion Rhode Island meets the "significant connection" standard to a greater extent than does Louisiana.
I also disagree with the view that, as expressed in the majority opinion, "there is not now pending a custody proceeding in Rhode Island". Revised Statute 13:1705 A specifically prohibits the exercise of jurisdiction by a court of this state when "at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part, unless the proceeding is stayed by the court of the other state ..."
When plaintiff filed her present rule for custody the Rhode Island court had granted custody to the defendant, but that proceeding had not been completed. The Rhode Island court was attempting, and is still attempting, to enforce its decree. It was prevented from doing so only because plaintiff had left its jurisdiction. Thus, it appears clear to me that, within the intendment of R.S. 13:1705 A, a proceeding "concerning the custody of the child" was and is pending in Rhode Island. To hold otherwise violates the provisions of R.S. 13:1705 A. In order to avoid the consequences of that section, all that the losing party need do is wait until the custody decree comes down and then go to another jurisdiction. That is exactly what the plaintiff has done here.
Relative to the conflicting evidence as to why plaintiff moved to Louisiana with the child, it appears to me she did so, at least primarily, for the purpose of avoiding the consequence of the Rhode Island decree. Practically all the evidence to the contrary consists of the self-serving testimony of the *776 plaintiff herself. And this view, that plaintiff left Rhode Island to seek a forum more favorable to her, is confirmed in part by the transcripts of the April 20 and April 27, 1979 hearings in Rhode Island. Moreover, I find it extremely difficult to believe plaintiff's testimony regarding her understanding of the April 4, 1979 Rhode Island decree even without those transcripts.
In addition, the chronology of the events appears to me to be significant. The Rhode Island decree "transferring physical possession" was rendered on April 4, 1979. Only a few days later plaintiff left Rhode Island and came to Louisiana. She filed her rule for custody on June 11, 1979, only approximately two months after her arrival in Louisiana and just five days after her arrest on kidnapping charges.
Nor am I able to find that it is in the best interest of the child that this matter be tried in Louisiana.
Nor do I agree with the majority that Louisiana is the more convenient forum. Just as the plaintiff circumvented the Rhode Island court order for visitation while she lived in Rhode Island, and in Massachusetts "one-half block from the Rhode Island state line", by fleeing from Rhode Island, she now has made it almost impossible for the father to have visitation rights and to litigate the matter.
Under all of these circumstances, the exercise of jurisdiction by Louisiana contravenes the whole purpose of the Uniform Child Custody Jurisdiction Law; it encourages shopping around for a more favorable forum. Plaintiff was found in contempt by the Rhode Island court for fleeing the jurisdiction on two occasions, for failing to follow the court's directive regarding visitation rights, and for failing to surrender the child as ordered by the court.
In my view, that law requires that jurisdiction be retained in the Rhode Island court. Accordingly, as I would reverse and order the trial court to decline jurisdiction,
I respectfully dissent.
NOTES
[1] LSA-R.S. 13:1700 provides as follows (in pertinent part):

"A. The general purposes of this part are to:
...
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state."
[2] LSA-R.S. 13:1705 & 1706(C) read as follows, in pertinent parts:

"§ 1705. Simultaneous proceedings in other states.
A. A court of this state shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
B. ...
C. ...."
"§ 1706. Inconvenient forum.
A. ...
B. ...
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) If another state is or recently was the child's home state.
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
...."
[3] The general purposes of the Uniform Child Custody Jurisdiction Law include: the avoidance of jurisdictional conflict and the shifting of children with "harmful effects on their well being" (LSA-R.S. 13:1700(A)(1)); cooperation between state courts so that the decree is rendered in the state that "can best decide the case in the interest of the child" (LSA-R.S. 13:1700(A)(2)); and discouraging continuing controversies "in the interest of greater stability of home environment and of secure family relationships for the child." (LSA-R.S. 13:1700(A)(4)).