463 So.2d 932 (1985)
Raymond William INGRAM, Plaintiff-Respondent,
v.
Betty Eilene Hollingsworth INGRAM, Defendant-Applicant.
No. 16847-CW.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
*933 Stephen R. Burke, Minden, for plaintiff-respondent.
Sockrider, Bolin & Anglin by D. Rex Anglin, Shreveport, for defendant-applicant.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
Betty Eileen Hollingsworth Ingram, applicant, sought this court's supervisory review of an interlocutory judgment of the district court holding that Louisiana had jurisdiction to modify a Texas child custody judgment. We granted writs in order to determine whether the district court erred in finding that the Texas custody judgment was enforceable in this state and if it is, to determine whether the district court erred in failing to enforce that judgment under the Uniform Child Custody Jurisdiction Act (UCCJA), LSA-R.S. 13:1700 et seq., and the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A. Finding that the district court erred in its determination, we reverse and remand with instructions.
The applicant and Raymond William Ingram, the respondent, were married in July of 1976 in the state of Oklahoma. For approximately two to three years prior to their separation in July of 1981, the parties lived as husband and wife in Houston, Fort Bend County, Texas. One child, Carrie Lynn Ingram, was born of this marriage on November 21, 1976, and is the object of this litigation.
In July of 1981, the applicant moved out of the matrimonial domicile at 12822 Belnap Road in Houston, Texas with her child and moved into the home of Martha Louise Metcalf. Applicant hired an attorney in Houston, William Hilford, to institute divorce and custody proceedings. In that same month, applicant's attorney filed applicant's action in Harris County, Texas. After discovering that he had filed the action in the wrong county, applicant's attorney in August of 1981 refiled the divorce and custody action in Fort Bend County, Texas.
The record reflects that applicant's attorney and the respondent had numerous conversations concerning applicant's divorce action, and that the respondent expressed to applicant's attorney that he would avoid personal service of process of applicant's divorce and custody action.
During July and August of 1981, while Carrie Ingram was still in her mother's physical custody, the respondent was allowed to take the child for visitation.
On August 10, 1981, respondent picked up the child at the Metcalf home for the purpose of visitation. The record reflects that the respondent failed to return the child to the applicant and that the applicant was prevented from seeing her child again until the present litigation was instituted in Webster Parish, Louisiana in July of 1984.
The record reflects that the applicant refiled her divorce and custody action on August 17, 1981 in Fort Bend County, Texas. However, due to the flight of the respondent, applicant was unable to obtain personal service upon him. Therefore, on February 12, 1982, applicant filed a motion for service of citation under Rule 106 of the Texas Rules of Civil Procedure. On that same date, a Fort Bend County District Judge issued an order finding that it was impractical to secure personal service upon the respondent. The Texas judge directed the constable to leave a copy of the citation with petition at the respondent's last known address at 12822 Belnap Road, Houston, Texas, and to mail a copy of applicant's original petition for divorce to respondent's attorney, Bernard Brooks, and to respondent's mother, Bonnie Ingram. On April 21, 1982, the Texas District Court granted applicant a judgment of divorce and appointed the applicant as managing *934 conservator of the child, Carrie Lynn Ingram.
Although the respondent was not personally served process the record clearly reflects that the respondent had knowledge of the divorce and custody litigation. Contained in the documents of the Texas proceeding is the affidavit of Betty Cardwell. Cardwell stated that respondent had discussed the divorce case with her and had instructed her to send any papers regarding the case to his mother who would give them to him.
The respondent testified that on August 10, 1981, he sold the horse stables which he owned to Gloria Mikulenka for $10.00. Respondent then picked up the child at the Metcalf home and left Houston with his daughter.
The respondent called the applicant several times during the two weeks after he had taken the child from the applicant. The respondent expressed to the applicant that he intended to keep the child and to not allow the applicant to obtain custody of the child. Respondent testified that after he left Houston, he lived for a short period of time in New Mexico. After New Mexico, the respondent moved to Anchorage, Alaska and lived there with the child from August to February of 1982. From February of 1982 to August of 1982, the respondent and the child lived in Sulphur, Louisiana. From August of 1982 to April of 1983 the respondent and the child lived on the Municipal Pier Road on Cross Lake in Shreveport, Louisiana. On April 4, 1983, the respondent remarried in Marshall, Texas. After April of 1983, the respondent moved with his new wife and the child to his present address in Springhill, Louisiana. The respondent, after leaving Houston, at no time informed the applicant of the whereabouts of himself or the child.
In March of 1982 the applicant engaged the services of the Child Find, Inc., an organization developed for the purpose of locating missing children. On July 13, 1984, the respondent filed a petition for custody of the child in the 26th Judicial Court in Webster Parish. Child Find, Inc. then notified the applicant of the institution of the proceedings by the respondent. The applicant filed an exception to the jurisdiction of the Webster Parish District Court and requested that the Texas judgment be enforced and that a Writ of Habeas Corpus be granted to return physical possession of the child to the applicant.
The district court, after a hearing, found that the Texas divorce and custody judgment was valid; however, the district court also found that Louisiana now has jurisdiction to modify the Texas judgment. It is upon this ruling from which the applicant has sought this court's supervisory review.
The applicant contends that the district court erred in holding that Louisiana has become the "home state" of the child and therefore has obtained jurisdiction to modify the Texas custody judgment, that the court erred by holding that Texas no longer has jurisdiction over the child solely on the basis that Louisiana has now become the "home state" of the child, and that the court erred in finding that Louisiana has become the "home state" of the child due to the facts surrounding the attainment of that status by the respondent. Applicant contends that respondent's actions of secreting the child from the mother for the requisite period of time and thereafter seeking the protection of the Louisiana courts should disallow the respondent from accruing the six months required for "home state" status. Finally, applicant contends that the court also erred in finding that Texas no longer has continuing jurisdiction under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A.
The respondent contends that the Texas decree of custody is invalid and unenforceable because there was not a proper service of process under Texas law, and further, the Texas court no longer had jurisdiction at the time of the rendition of the judgment. Additionally, respondent contends that the Louisiana courts now have jurisdiction to modify the Texas judgment as the "home state" of the child.
The Uniform Child Custody Jurisdiction Act (UCCJA) now adopted by 49 states *935 including Louisiana and Texas, was promulgated for the stated purpose of avoiding jurisdictional competition in conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflicts over custody, deterring abduction and unilateral removal of children, avoiding relitigation in another state's custody decisions, and promoting an exchange of information and other mutual assistance between courts in different states. LSA-R.S. 13:1700; Peery v. Peery, 453 So.2d 635 (La.App. 2d Cir.1984).
Two of the principal purposes of the UCCJA are to discourage forum shopping and to protect the best interest of the child. The UCCJA attempts to bring about an orderly system of decision while simultaneously protecting the best interest of the child. The underlying policy of the UCCJA is that it is in the best interest of the child to prevent the shifting from state to state of children by parents seeking to gain custody or rights in one state even though denied those rights by the decree of another state. The UCCJA is designed to bring some assemblance of order into the existing chaos. It limits custody jurisdiction to the state where the child has his home or where there are other strong contacts with the child and his family. See R.S. 13:1702. It provides for the recognition and enforcement of out-of-state custody decrees in many instances. See R.S. 13:1712 and 13:1714. Jurisdiction to modify decrees of other states is limited by giving a jurisdictional preference to the prior court under certain conditions. See R.S. 13:1713. Access to a court may be denied to applicants who have engaged in child snatching or similar practices. See R.S. 13:1707. Also, the UCCJA opens up direct lines of communication between courts of different states to prevent jurisdictional conflict and bring about interstate judicial assistance in custody cases. See R.S. 13:1705 and 13:1719.
In a court's determination of whether the courts of this state have jurisdiction or should decline jurisdiction under the UCCJA it is crucial that each of the multifaceted components of the act be construed to promote the general purposes of the act. LSA-R.S. 13:1700 B.
Consistent with the goal of avoiding, in this state, relitigation of custody decisions of other states, R.S. 13:1712 provides that the courts of Louisiana shall recognize and enforce an initial or modification decree of a court of another state which has the same jurisdiction under the statutory provisions that are in substantial accordance with § 1702, or which were made under factual circumstances meeting the jurisdictional standards of § 1702.
In the present case, in response to the respondent's petition for custody, the applicant filed an exception to the jurisdiction of the Louisiana court and sought enforcement of her Texas custody decree pursuant to R.S. 13:1714. Therefore, the initial question before the court below and this court now on review is whether the Texas custody judgment is entitled to recognition in the courts of this state. The threshold question in determining whether the initial Texas custody decree should be enforced under § 1712 is whether Texas had jurisdiction, or now has jurisdiction, under the peculiar jurisdictional prerequisites of the UCCJA, as set forth in R.S. 13:1702. R.S. 13:1702 provides, in pertinent part, as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state withing 6 months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and parents *936 or the child and at least one contestant have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the childs present or future care, protection, training, and personal relationships;...
A review of the facts in the present case clearly reflects that the Texas court did meet the jurisdictional prerequisites of § 1702. Specifically, the facts reflect that the parents resided with the child in Houston, Fort Bend County, Texas for approximately two-and-one-half years prior to their separation. Under R.S. 13:1701, "home state" is defined as the state which the child, immediately preceding the time involved, lived with his parents or a parent for at least six consecutive months. Clearly, Texas was the home state of the child under § 1702 A(1) at the time which the initial Texas custody action was filed. Despite meeting the jurisdictional requirements of the UCCJA, the respondent contends that the Texas custody judgment is unenforceable because there was no proper service of process under Texas law.
The record reflects that numerous attempts were made to personally serve the respondent in the Texas action. However, due to the evasive tactics of the respondent, he was not personally served in the Texas action. As a consequence, on February 12, 1982, the applicant filed a motion for service of citation under Texas Rules of Civil Procedure, Rule 106. Rule 106 provides for substituted service of process in Texas when personal service cannot be obtained pursuant to Texas Rule of Civil Procedure, Rule 103.[1]
Pursuant to Rule 106, applicant supplied supporting affidavits. The affidavit of Betty Cardwell states that she has known the respondent and that she has talked to the respondent concerning the pending divorce action. Respondent instructed Mrs. Cardwell to send any papers regarding the case to his mother. Henry Robertson, Fort Bend County, Texas Deputy Sheriff also provided an affidavit. Robertson states in his affidavit that he knew the respondent after recently serving him some papers at which time the respondent stated to Robertson that the deputy sheriff would not be able to catch him with divorce papers which the respondent expected in the near future. Robertson also stated that he knew the respondent's residence to be 12822 Belnap Road, Houston, Texas, and that the respondent operated a business known as Turner Stables, also located on Belnap Road.
Pursuant to applicant's motion, the Fort Bend County, Texas District Court ordered respondent to be served citation pursuant to Rule 106. The court directed the constable to leave a copy of the citation with petition attached at the defendant's address at 12322 Belnap Road, Houston, Texas. Additionally, the court ordered the respondent's attorney, Bernard Brooks, and the respondent's mother, Bonnie Ingram, to also be provided with a copy of the citation and petition.
After service of process was accomplished pursuant to Rule 106, the Texas *937 court, on April 21, 1982, granted applicant's divorce and appointed applicant as managing conservator of the child.
It appears from the record that the applicant fully complied with Texas Rule of Civil Procedure Rule 106. Therefore, we find that proper service of process under Texas law was obtained.
Respondent contends that at the time judgment was rendered in April of 1982, the Texas court no longer had jurisdiction under the PKPA 28 U.S.C. § 1738A.
Pursuant to 28 U.S.C. § 1738A(e), before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child. The record in the present case fully reflects that the respondent had notice of the Texas proceedings. Additionally, the record reflects that the respondent had an opportunity to be heard in Texas and chose not to appear. Instead, the respondent chose to take the child and flee from the state of Texas. Therefore, we find that the respondent had reasonable notice and opportunity to be heard in the Texas litigation.
Finding no merit to respondent's contentions, the district court was correct in finding that the Texas judgment was entitled to recognition in this state.
Having determined that the Texas judgment is entitled to recognition in this state, the next inquiry is whether the Louisiana court now has jurisdiction to modify the out-of-state decree. LSA-R.S. 13:1713 provides for modification of out-of-state decrees. Section 1713 provides as follows:
A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance [§ 1702] or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.
B. If a court of this state is authorized under Subsection A of this section and Section 1707 to modify a custody decree of another state it shall give due consideration to the transcript of the record and the other documents of all previous proceedings submitted to it in accordance with Section 1721.
The district court found that since the child has resided in this state for more than six months, Louisiana now has jurisdiction, as the "home state" of the child under § 1702, to modify the Texas decree. Meeting the jurisdictional prerequisite of § 1702 does not necessarily give a state authority to modify an out-of-state decree. Consistent with the goal of discouraging unilateral removal of children to avoid the jurisdiction of another state, the courts of this state must determine whether jurisdiction must be declined pursuant to Section 1707.
LSA-R.S. 13:1707 provides as follows:
A. If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
B. Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify the custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary of relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.

*938 C. In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees incurred by other parties or their witnesses.
This section incorporates the "clean hands doctrine." Under this doctrine, courts refuse to assume jurisdiction to reexamine an out-of-state custody decree when the applicant has abducted the child or has engaged in some other objectionable scheme to obtain or retain physical custody of the child in violation with that decree. See Uniform Child Custody Jurisdiction Act (ULA) § 8, Commissioner's Note.
The evidence in the present case reflects that upon separation of the applicant and respondent, the applicant had physical custody of the child and allowed visitations by the respondent. Evidence also reflects that respondent was fully aware of applicant's divorce and custody action; subsequently, in a scheme to avoid jurisdiction of the Texas court, and to obtain physical custody of the child, respondent moved the child from the state of Texas under the disguise of visitation. Respondent readily admits that he left Texas with his child in order to prevent the child from seeing the applicant again. The record also reflects that the respondent was successful in not allowing the applicant to have any knowledge of the whereabouts of or any contacts with the child until the respondent initiated the present custody action in Webster Parish approximately three years after leaving Texas.
Respondent's actions in absconding with the child and secreting the child from her mother for approximately three years is clearly reprehensible. There cannot be any doubt that this is a case which clearly falls within § 1707 B. In the present case, exercise of jurisdiction by the courts of this state clearly would be contrary to the expressed intent and purposes of the UCCJA.
Therefore, despite meeting the jurisdictional prerequisites of § 1702, the district court erred in failing to decline jurisdiction by reason of conduct pursuant to § 1707 B.
The applicant additionally has contended that pursuant to the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A, Louisiana is without authority to modify the Texas decree. We agree.
The PKPA provides for a full faith and credit to be given to the child custody determinations of every state. 28 U.S.C. § 1738A(a) provides as follows:
The appropriate authorities of every state shall enforce according to its terms and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another state.
The jurisdictional prerequisites of the PKPA are identical to the jurisdictional requirements of the UCCJA found in LSA-R.S. 13:1702. Modification is allowed in 28 U.S.C. § 1738A(f) and provides as follows:
A court of the state may modify the determination of the custody of the same child by the court of another state if
(1) It has jurisdiction to make such a child custody determination; and
(2) The court of the other state no longer has jurisdiction, or has the declined to exercise such jurisdiction to modify such determination.
A reading of the PKPA reflects that Texas continues to have jurisdiction of this case. Under 28 U.S.C. § 1738A(d) "jurisdiction of a court of a state which has made a child custody determination consistent with the provisions of this section [meaning the jurisdictional requirements of the UCCJA] continues as long as the requirement of subsection (c)(1) of this section [such court has jurisdiction under the law of such state] continues to be met and such state remains the residence of the child or of any contestant."
The record reflects in the present case that Texas remains the residence of the applicant. Under 28 U.S.C. § 1738A(d), Texas continues to have jurisdiction of this child custody litigation. Therefore, pursuant to 28 U.S.C. § 1738A(f), Louisiana does *939 not have authority to modify the Texas judgment.
Therefore, the district court erred in not declining to exercise jurisdiction under the discretionary provisions of the UCCJA, R.S. 13:1707 and under the provisions of the PKPA, 28 U.S.C. § 1738A.

DECREE
Having found that the district court erred in finding that Louisiana has jurisdiction to modify the Texas judgment, we reverse. Applicant's Writ of Habeas Corpus is granted. The district court shall immediately order the respondent to appear before the court with the child to effectuate the transfer of the child to the applicant. Further, the district court shall hold a hearing, within a reasonable time, to adduce evidence of applicant's necessary travel and other expenses, including attorney's fees, to which applicant is entitled to be awarded under LSA-R.S. 13:1707 C. Costs of the appeal are to be paid by the respondent.
REVERSED AND REMANDED.
NOTES
[1] RULE 106. Service of Citation

(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any officer authorized by Rule 103 by
(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
(2) mailing to the defendant by registered or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.
(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service
(1) by an officer or by any disinterested adult named in the court's order by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or
(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.