474 So.2d 1374 (1985)
Helen B. SNIDER, Plaintiff-Appellant,
v.
David K. SNIDER, Defendant-Appellee.
No. 17313-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*1376 Robert W. Raley, Shreveport, for plaintiff-appellant.
Love, Rigby, Dehan, Love & McDaniel by Truly W. McDaniel, Shreveport, for defendant-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
In this child custody suit, plaintiff, Helen B. Snider, appeals from the judgment of the trial court in favor of defendant, David K. Snider, sustaining defendant's declinatory exception of lack of subject matter jurisdiction in plaintiff's action for a writ of habeas corpus and rule for custody. For the following reasons, we affirm the judgment of the trial court.
The record shows that the plaintiff and defendant were married in Salt Lake City, Salt Lake County, Utah on June 7, 1972 and established a matrimonial domicile in Louisiana. Two children were born of the marriage, Adam Benjamin Snider, born April 4, 1973 and Michael Kinard Snider, born April 7, 1978. Both children were born in Louisiana. Although the record discloses that the parties later established a matrimonial domicile in Utah, it is not clear from the record when such domicile was established.
In a judgment by the Third Judicial District Court of Salt Lake County, State of Utah, dated May 13, 1980, and amended on June 3, 1980, the plaintiff, Helen Snider, was granted a decree of divorce from the defendant. Plaintiff was awarded permanent custody of the two minor children. Defendant, David Snider, was awarded liberal visitation rights with the children. The judgment also included a visitation plan in the event that plaintiff left the State of Utah.
On July 7, 1982, the defendant changed employment and moved from Utah to Boulder, Colorado, where he remains to the present date. The plaintiff and the minor children remained in Utah until May, 1984 and then moved to Caddo Parish, Louisiana. The maternal grandparents of the children live in Caddo Parish and the children were enrolled in public school here.
On September 12, 1984, the plaintiff filed this action alleging that on that date at 7:45 a.m. when she was getting into her automobile to take the children to school, four men drove up in a blue van. One of the men was the defendant, David Snider. Plaintiff alleged that the men forcibly removed the children. Plaintiff was handed a document entitled "Decree of Modification" filed on September 7, 1984 in Utah. The decree amended the decree of divorce previously entered so as to award the defendant, David Snider, custody of the two minor children subject to plaintiff's right of reasonable visitation. It appears that the children were later removed from this state and have been residing since that date in Colorado with defendant.
Plaintiff alleged that Utah had no interest or jurisdiction under the Uniform Child Custody Jurisdiction Act, LSA-R.S. 13:1700 et seq., hereinafter referred to as the UCCJA, and that defendant had obtained the custody order by fraudulent means. Plaintiff further alleged that the defendant continually harassed plaintiff by filing many court actions against her and then would either dismiss the proceedings or simply fail to appear. Plaintiff alleged that although she received notice of the Utah proceedings, she did not have the means to return to Utah and believed from the defendant's previous actions that he would not ultimately seek a judgment. Plaintiff averred that defendant had obtained the child custody modification decree in retaliation of plaintiff moving from Utah to Louisiana. Plaintiff alleged that it was in the best interest of the children that a Louisiana court assume jurisdiction of the *1377 matter and award custody of the minor children to the plaintiff and prayed that the Utah judgment be declared an absolute nullity or in the alternative, that the Utah custody decree be modified.
On November 27, 1984 the defendant filed a declinatory exception of lack of subject matter jurisdiction. Defendant alleged that at the time these proceedings were instituted, Utah qualified as the home state of the children under the UCCJA, proceedings were then pending in that state and that Louisiana was not the home state of the children nor was there any significant connection with this state. Defendant further alleged that even if Louisiana had jurisdiction, it was mandated not to exercise that jurisdiction under the provisions of the UCCJA, specifically LSA-R.S. 13:1705(A), 1706, 1707(B) and 1713(A). In the alternative, defendant alleged that this state should not, in the exercise of its discretion, exercise jurisdiction over this matter under the provisions of LSA-R.S. 13:1706 and 1707(A).
The court sustained the defendant's exception on December 12, 1984 and dismissed the plaintiff's action. There are no reasons for judgment contained in the record.
The certified court records of the Utah proceedings filed as a joint exhibit in the instant action reveal that from the time of the divorce of the parties, the defendant experienced significant difficulties in exercising his visitation privileges and required court intervention on several occasions to enforce his visitation rights. Plaintiff's allegations that defendant filed many court actions in order to harass her are not supported by the record.
The Utah record shows that although plaintiff already moved to Louisiana with the children as she was entitled to do, defendant filed motions in the Utah court seeking to enforce visitation privileges and to modify the custody decree on July 20, 1984. Defendant alleged that he had been denied summer visitation with the children by the plaintiff and that due to the visitation difficulties, it was in the best interest of the children that a change of custody be ordered. Domiciliary service of copies of the motions was made upon plaintiff at her residence in Shreveport, Louisiana on July 23, 1984. On July 30, 1984, a hearing was held on the defendant's motion to show cause in Utah. The plaintiff did not appear. The court ordered defendant immediate visitation with the children for a four week period and granted the motion of plaintiff's attorney of record to withdraw. The hearing on the motion for modification of the decree was set for August 28, 1984. The court order was personally served on plaintiff on August 9, 1984. Notice that plaintiff's attorney of record had withdrawn was mailed to plaintiff pursuant to Rule 2.5 of the Rules of Practice of the Utah District Court.
On August 28, 1984, a hearing was held on defendant's motion for a modification of the decree. The plaintiff did not make an appearance. Judgment was rendered by the court on September 7, 1984. The Utah court found that the records of the proceedings evidenced many instances of plaintiff's interference with the defendant's visitation privileges. The court further found that such conduct was so flagrant that it constituted a material change of circumstances. The court held that the defendant was a fit and proper person to be awarded custody. The court noted that the defendant owned a home, had remarried and had an adequate income. The court further held that it was in the best interest of the children to be placed in the custody of the defendant as he had indicated he would not interfere with the children's maintenance of a normal parental relationship with plaintiff, said custody subject to plaintiff's right of reasonable visitation.
On appeal, the issue before this court is whether the trial court erred in sustaining the defendant's declinatory exception under the provisions of UCCJA.
The Uniform Child Custody Law went into effect in Louisiana on October 1, 1978. The UCCJA, which has been adopted by 49 states, including Utah[1], was promulgated *1378 for the stated purpose of avoiding jurisdictional competition in child custody conflicts, promoting interstate cooperation, litigating child custody where the child and family have the closest connections, discouraging continuing conflicts over custody, deterring the abduction and unilateral removal of children, avoiding the relitigation of another state's custody decisions and promoting the exchange of information and other mutual assistance between the courts in different states. LSA-R.S. 13:1700, Ingram v. Ingram, 463 So.2d 932 (La.App. 2d Cir. 1985); Miller v. Miller, 463 So.2d 939 (La. App. 2d Cir.1985); Peery v. Peery, 453 So.2d 635 (La.App. 2d Cir.1984); Schroth v. Schroth, 449 So.2d 640 (La.App. 4th Cir. 1984); and Speights v. Rockwood, 451 So.2d 1275 (La.App. 3d Cir.1984).
The UCCJA was designed to help settle child custody problems which often arise in the quite mobile society of today. As noted in Ingram v. Ingram, supra, two of the principal purposes of the act are to discourage forum shopping and to protect the best interests of the child. The UCCJA attempts to create an orderly system of decision while simultaneously protecting the best interest of the child.
"The underlying policy of the UCCJA is that it is in the best interest of the child to prevent the shifting from state to state of children by parents seeking to gain custody or rights in one state even though denied those rights by the decree of another state. The UCCJA is designed to bring some assemblance of order into the existing chaos."
Ingram v. Ingram, supra, at 935.
In Settle v. Settle, 276 Or. 759, 770, 556 P.2d 962, 968 (1976) cited in Speights v. Rockwood, supra and Hadley v. Hadley, 394 So.2d 769 (La.App. 4th Cir.1981), writ denied, 399 So.2d 622 (La.1981), the Oregon Supreme Court stated that:
"(a) close reading of the Act discloses a schizophrenic attempt to bring about an orderly system of decision and at the same time to protect the best interests of the children who may be immediately before the court. When put to the test of a factual situation presenting an irreconcilable conflict between those two interests, we read the Act as making predominate [sic] the best interests of the children before the court."
As noted in Speights v. Rockwood, supra, the broad grant of jurisdiction provided in LSA-C.C.P. Art. 10(A)(5) over the status of the custody of a minor who is domiciled in, or is in, this state has been to a certain degree eroded by the provisions of the UCCJA.
In the determination of whether the courts of this state should either decline or exercise jurisdiction under the UCCJA, it is crucial that each multi-faceted and related component of the act be construed to promote its general purposes. LSA-R.S. 13:1700 B, Ingram v. Ingram, supra, and Miller v. Miller, supra.
The UCCJA limits jurisdiction in LSA-R.S. 13:1702 to make a child custody determination by initial or modification decree as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has *1379 been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
It has been suggested that the jurisdictional tests are listed in the statute in descending preferential order. Schroth v. Schroth, supra, and citation therein. Home state is defined in LSA-R.S. 13:1701(5) as follows:
"`Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."
Jurisdiction may be declined under the UCCJA if the court finds that it is an inconvenient forum, LSA-R.S. 13:1706 or by reason of the conduct of the petitioner, LSA-R.S. 13:1707. Further, the court shall not exercise jurisdiction if at the time of filing a petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction, LSA-R.S. 13:1705.
The Commissioners' comment to the jurisdictional article in the Uniform Laws Annotated, Volume 9, Section 3, indicate that when a state cannot meet the requirements of home state jurisdiction, jurisdiction may be retained, however, for a period of time due to that state's significant connection with the parties until another state acquires home state jurisdiction.
As noted in Ingram v. Ingram, supra, and Miller v. Miller, supra, LSA-R.S. 13:1712 provides that the courts of Louisiana shall recognize and enforce a custody decree of another state which has jurisdiction under statutory provisions in substantial accord with LSA-R.S. 13:1702, or which are made under the factual circumstances meeting the jurisdictional standards of LSA-R.S. 13:1702. This is consistent with the goal under the UCCJA of avoiding relitigation of custody decisions of other states in this state.
With reference to the modification of a custody decree of another state, LSA-R.S. 13:1713 provides:
A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Part or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.
B. If a court of this state is authorized under Subsection A of this Section and Section 1707 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with Section 1721.
When the court of another state has rendered a custody decree which is in accordance with the UCCJA, courts of this state are allowed to exercise jurisdiction to modify that custody judgment pursuant to limited exceptions under the UCCJA. Specifically, the courts of this state must meet the jurisdictional prerequisites and standards of LSA-R.S. 13:1702 and the court of the state that rendered the initial decree must no longer have jurisdiction. Miller v. Miller, supra.
*1380 Further, one of the significant policies of the UCCJA and one of the purposes behind its enactment is to prevent relitigation of custody disputes when the court of a state, having jurisdiction, has rendered a custody decree and no substantial change in circumstances is shown to have occurred since the rendition of that decree.
In the instant case, plaintiff has filed a writ of habeas corpus and rule for custody requesting that the Utah custody decree be declared a nullity or in the alternative, that the decree be modified. In response, defendant filed an exception to the jurisdiction of the Louisiana court. Therefore, the primary question before this court is whether the Utah judgment is entitled to recognition in the courts of this state and whether Louisiana has jurisdiction to modify the Utah judgment. The threshold question in determining whether the Utah custody decree should be enforced under LSA-R.S. 13:1712 is whether Utah had jurisdiction or now has jurisdiction under the specific jurisdictional prerequisites of the UCCJA, as set forth in LSA-R.S. 13:1702.[2]
A review of the facts in the instant case reveal that at the time of the initial custody decree in 1980, Utah clearly had jurisdiction over the matter as it was the home state of the children and the parents. The plaintiff and the children continued to live in Utah for approximately four more years after the divorce. However, at the time of the institution of the proceedings by defendant which ultimately resulted in the modification decree in September, 1984, Utah did not meet the home state jurisdictional requirements under LSA-R.S. 13:1702 A(1).
The state of Utah was not the home state of the children at the time the proceedings were commenced as the children had moved to Louisiana in May, 1984. Further, although Utah had been the home state within six months before the commencement of the proceeding, there was no parent continuing to live in Utah as both plaintiff and defendant had moved from that state.
However, it is clear that Utah did have a significant connection with the children and at least one contestant at the time of the initial decree up until the commencement of the modification proceedings in July, 1984. Utah was the last home state of the children and no other state had acquired home state jurisdiction at the time the modification proceedings were instituted in Utah. Thus, Utah had jurisdiction and the Utah decree rendered in September, 1984 was valid. Upon finding that the Utah decree was valid, it is necessary to next determine whether this state may properly exercise jurisdiction to modify the Utah decree pursuant to LSA-R.S. 13:1713.
Clearly, Louisiana does not meet the requirements necessary to qualify as the home state of the children because the children have not resided in this state the requisite period of time. However, Louisiana does have a significant connection to the plaintiff and the children. The record evidences that Louisiana is the former home of the plaintiff, the children were born in this state and the maternal grandparents of the children live in this state.
As noted by the Louisiana Supreme Court in Revere v. Revere, 389 So.2d 1277 (La.1980), the significant connection standard is more flexible than the home state standard. It is based on the strong contacts of the children and the contestant with the state where the proceeding is brought. The standard affords a "best interest" basis for jurisdiction when this state has a legitimate concern as to the custody of the children and enjoys superior access to evidence concerning the children's care, training, well-being and personal relationships. See also Schroth v. Schroth, supra, and Hadley v. Hadley, supra.
While under some circumstances more than one state may have a significant connection, the clear intent of LSA-R.S. 13:1702 A(2) is that the state with the maximum contacts with the children is the proper or preferred state to exercise its jurisdiction *1381 under this standard. Miller v. Miller, supra. See also Leigh v. Leigh, 457 So.2d 196 (La.App. 2d Cir.1984).
As noted earlier, when more than one state has a significant connection, the law requires that a comparative determination be made as to whether another state has a more or recent significant connection with the children and whether that state meets one or more of the jurisdictional prerequisites of LSA-R.S. 13:1702. Miller v. Miller, supra.
In making the comparison directed by the UCCJA, it is clear that Utah was undisputedly the home state of the children under LSA-R.S. 13:1702 A(1) for at least four years until May, 1984 when the plaintiff and the children moved to Louisiana. Once the plaintiff and the children moved to Louisiana, Utah may not have indefinitely continued as the home state. However, Utah still had a significant connection with the children as the children had resided there for the previous four years as compared to residing in Louisiana for a period of a few months. Further, no other state qualified under the UCCJA as the home state of the children at the time the modification proceedings were commenced in Utah and when the instant proceedings were commenced in this state.
At the time the modification decree was signed and filed in the Utah court on September 7, 1984, and at the time of the commencement of these proceedings in Louisiana five days later on September 12, 1984, Utah had and continued to have available sufficient information concerning the children's care, protection, training and personal relationships based upon the long residence of the plaintiff and the children in that state, which information could be supplemented, if necessary, by pertinent information arising in Louisiana during the two months in which plaintiff had resided here.
In examining and weighing the contacts of the children with Louisiana and Utah, it is clear that Utah enjoys a significant connection with the children and the plaintiff which is superior to and outweighs any connection or relationship between the parties and the state of Louisiana. Thus, while Louisiana did have a connection with the children and the plaintiff at the time the modification decree was rendered as they had moved to the state two months prior to the commencement of the proceedings, the contacts with Utah were stronger than and outweighed any contacts that the parties had with Louisiana. Therefore, even though Louisiana has a significant connection, this does not preclude a finding that Utah meets the significant connection standards enumerated in LSA-R.S. 13:1702 A(2).
As noted previously, although there are significant contacts between the plaintiff and the children and the State of Louisiana relative to the best interest of the children, it is also clear that the Utah court was very familiar with the parties and had continued to properly exercise jurisdiction throughout the long and difficult history of this case. In considering the apparent jurisdiction of the Utah court, the length of time the parties had resided in the State of Utah and the short period of time the plaintiff and the children had resided in Louisiana, the trial court did not err in declining jurisdiction in the instant case. Utah was recently the home state of the plaintiff and the children and the family had a close connection with Utah by virtue of their past residence. The Utah court was within its authority to exercise its jurisdiction over the modification proceedings in 1984. Certainly the Louisiana trial court's ruling in declining jurisdiction is not contrary to the express policy of LSA-R.S. 13:1700 et seq. which calls for the facilitation of the enforcement of the custody decrees of other states and the avoidance of relitigation of custody decisions of other states.
As provided by LSA-R.S. 13:1706, it is necessary to next determine whether this state is an inconvenient forum and should decline jurisdiction because the court of another state is a more appropriate forum.
LSA-R.S. 13:1706 provides in pertinent part as follows:
A. A court which has jurisdiction under this Part to make an initial or modification *1382 decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a curator ad hoc or other representative of the child.
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) If another state is or recently was the child's home state.
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
An examination of the above factors reveals that Louisiana is an inconvenient forum. Utah was recently the home state of the children and has a closer connection with the children and one or more of the contestants. Substantial evidence concerning the children's care, protection, training and personal relationships is more readily available in Utah. Further, the exercise of jurisdiction over this matter by this state would contravene the purposes of the UCCJA noted earlier. If Louisiana assumed jurisdiction of the modification action filed in Louisiana on September 12, 1984, this would essentially result in relitigation of the valid Utah decree which was signed and filed September 7, 1984. The plaintiff was properly notified of the pending Utah proceedings for modification and simply chose not to appear. Defendant should not be required to relitigate in Louisiana simply because Utah may no longer be the home state of the children.
Therefore, this court finds that it would be in the best interest of the children and a more convenient forum that the custody litigation occur either in Utah, the last home state of the children or in Colorado, which now may have become the home state of the children. Miller v. Miller, supra.
Plaintiff has referred the attention of this court to the jurisdictional requirements of the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A, hereinafter referred to as the PKPA.
As stated in Ingram v. Ingram, supra, the PKPA provides for full faith and credit to be given to the child custody determinations of every state. The act provides for the enforcement of child custody determinations made consistently with the act by another state, with the modification of such decree permissible only under certain limited circumstances.
As noted in Ingram v. Ingram, supra, the jurisdictional prerequisites of the PKPA are identical to the jurisdictional requirements of the UCCJA found in LSA-R.S. 13:1702. Having found that Utah has jurisdiction under the requirements of the UCCJA, it is not necessary for this court to further examine the application of the act to the instant case.
For these reasons, the judgment of the trial court in favor of defendant, David K. Snider, and against plaintiff, Helen B. Snider, is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] U.C.A.1953, §§ 78-45c-1 to 78-45c-26.
[2] There were no allegations in Utah or in this state that the children had been abandoned or that an emergency situation existed pursuant to LSA-R.S. 13:1702 A(3).