409 So.2d 570 (1982)
Patricia A. DILLON
v.
Hector MEDELLIN.
No. 81-C-2012.
Supreme Court of Louisiana.
January 25, 1982.
*571 F. Smith Knobloch of Knobloch & Knobloch, Thibodaux, for plaintiff-applicant.
Harry F. Cabral, Jr. of Cabral & Cabral, Metairie, for defendant-respondent.
CALOGERO, Justice.
In this case, a woman who has lived in Louisiana with her child for over two years petitioned the district court in Thibodaux, Louisiana on September 5,1980 to enforce a custody decree in her favor rendered in the State of Texas on May 26, 1977. She sought enforcement under the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1714(A).
When the Texas-residing father filed a declinatory exception of lack of subject matter jurisdiction in the Louisiana proceeding for the reason that the Harris County, Texas court had modified its original decree (i.e., the one the mother was seeking to enforce) with an emergency ex parte order dated July 8, 1980, appointing him temporary managing conservator of the minor child pending the outcome of his suit to change the custody decree, the Louisiana court sustained the exception and dismissed the mother's suit. She appealed to the First Circuit Court of Appeal which affirmed the lower court's dismissal. Dillon v. Medellin, 402 So.2d 149 (La.App. 1st Cir. 1981).
We granted writs on the wife's application to examine her substantial contention that Louisiana has jurisdiction over her action under the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1700 et seq. For the reasons which follow, we find that Louisiana does have jurisdiction in this custody matter.
The pertinent facts are as follow: Patricia Dillon (formerly Medellin) was divorced from her husband in Harris County, Texas on May 26, 1977. She received custody of their minor child, Margarita Lourdes Medellin. Under the terms of the divorce decree, the father was given visitation privileges on alternating weekends and holidays, and for thirty days (30) during the summer months. In April, 1978, the mother and child moved to Louisiana, after which the mother remarried. *572 Both mother and child have continued to reside in Louisiana for the more than two years before this suit was filed.
On July 8, 1980, just before the expiration of a thirty day child visitation period, the Texas father petitioned the Harris County, Texas court to modify the original custody decree, alleging that the court had continuing jurisdiction over the matter, and that the child's circumstances had changed so materially that retention of custody with the mother would be injurious to the child's welfare. The father attached to the motion an affidavit stating, in effect, that his four year old daughter had revealed to him during the visitation period in Texas that her mother and stepfather in the Thibodaux home were smoking marijuana daily, and that the stepfather had played sexual "games" with the child.
The mother filed a special appearance challenging the jurisdiction of the Texas court since she and her daughter had been Louisiana residents for more than six months prior to the filing of the modification petition by the Texas father. The father, before the special appearance motion hearing had been conducted, filed an original petition arguing as an alternative to his modification petition based on continuing jurisdiction, that the Texas court had original jurisdiction, especially under Tex.Fam. Code Ann. § 11.045(a)(2)(B) (Vernon Supp. 1980-81): the child was physically present in Texas and a serious immediate question existed concerning the child's welfare.
On September 5, 1980, the mother petitioned the district court in Lafourche Parish to enforce the 1977 Texas custody judgment and to order that the child be returned to Louisiana and that the father's visitation rights be terminated. On the rule to show cause, the district court sustained the father's declinatory exception to the Louisiana court's jurisdiction and dismissed the case on October 10,1980. The dismissal, for lack of jurisdiction, was appealed by the mother to the Louisiana Fourth Circuit Court of Appeal.
In the meantime, in Texas, by an order dated October 21, 1980, the Harris County district court denied the mother's challenge to its jurisdiction and named the father temporary managing conservator under its original jurisdiction. Thereafter a default judgment was rendered on February 25, 1981 against the mother, who had made no general appearance and whose pleadings were stricken upon her failure to post a $2500.00 cost bond. In the default judgment, the father was given permanent custody and the mother was ordered to pay $10.00 per month as child support. From that order of the Harris County District Court, the mother appealed to the Texas Court of Civil Appeals. While the mother's appeal was pending in the Texas appellate court, the Fourth Circuit Court of Appeal of Louisiana on June 29, 1981 affirmed the Lafourche Parish district court's dismissal of the mother's Louisiana case "because there is presently pending in the Texas court, under its original jurisdiction, a proceeding concerning the custody of Margarita." From that judgment, the plaintiff mother sought a writ in this Court. We granted her writ on September 28, 1981.
Then, on October 29, 1981, before the case was argued in this Court, the Texas Court of Civil Appeals reversed the Harris County district court's resolution of the jurisdiction question and dismissed the father's Texas case on due process and jurisdictional grounds. The Texas Court of Civil Appeals found that "[i]t would ... be inconvenient, if not impossible, to effectively develop those issues [the welfare and best interests of the child] in the Texas courts, and the mother would not be afforded due process of law if she is required to defend this action in the State of Texas." Dillon v. Medellin, (Tex.Civ.App. 1st Dist. 1981), No. # 18054.
A copy of the opinion of the Texas Court of Civil Appeals was attached to the brief filed in this Court by relator. Counsel for the respondent was afforded an opportunity to respond to that submission and has not done so.[1] Independent inquiry by this *573 Court directed to the Clerk's office of the Texas Court of Civil Appeals and Texas Supreme Court establishes, to our satisfaction at least, that after the opinion of the Texas Court of Civil Appeals was rendered, the husband sought a rehearing which was denied, and he then filed an application for writs in the Texas Supreme Court, which is pending at the present time. Thus, within the Texas court system the judgment of the Texas Court of Civil Appeals is not final. Nonetheless, because of that extant opinion, there is no outstanding modification decree of the Harris County, Texas district court favorable to the father. The judgment rendered in the district court was upset by the Texas Court of Civil Appeals. And as far as we can appreciate, the only valid outstanding Texas decree is the outset 1977 decree by which the wife was given custody of the child. This case is thus in a different procedural posture today than it was in when the Louisiana Fourth Circuit Court of Appeal decided this case and when we granted writs upon application of relator, Mrs. Dillon.
We are tempted to resolve this litigation simply by relying upon the opinion of the Texas Court of Civil Appeals and upon the information we have obtained from the Texas court system about the status of the Texas litigation. That information would emasculate the very foundation of the decisions we review, (the dismissal of the wife's Louisiana lawsuit by the district court and Court of Appeal), that is, the pendency in Texas of a child custody award deemed by the lower courts to be preclusive of their assuming jurisdiction under R.S. 13:1705. If there is no custody judgment favoring the father pending in the Texas courts, there is no longer, even arguably, any bar to the mother's Louisiana suit. There would surely be jurisdiction in Louisiana under La.R.S. 13:1702 for this Louisiana resident mother to enforce the two year old original custody decree in her favor.
Nonetheless, because there may be some procedural problem about taking cognizance of information we have secured concerning the Texas proceedings subsequent to the district court judgment, we choose instead to decide this case by examining the legal issues which prompted our granting relator's writ.
When we granted this writ we were interested in scrutinizing the Uniform Child Custody Jurisdiction Act as adopted in Louisiana (La.R.S. 13:1700 et seq.) to determine its proper application in the fact situation presented in this case.
We will therefore consider the case simply on the basis of the record as it existed when the case was presented in the district court and the Court of Appeal. In that posture there is simply an outstanding Texas modification decree of February 25, 1981 granting custody to the Texas father under the Texas court's original jurisdiction because "the child is physically present in [the] state and there is a serious immediate question concerning the welfare of the child." Tex.Fam.Code Ann. 11.045(a)(2)(B). With an extant custody decree of another state, Louisiana courts may not take and settle a custody matter between the same parties unless the court of the other state no longer has, or has declined to take, jurisdiction and unless the Louisiana court itself has jurisdiction. See La.R.S. 13:1713(A).
The question presented therefore is whether the Texas district court had jurisdiction in this instance to award custody to the father. Another way of looking at the legal question is this: if the roles of the Texas and Louisiana courts were reversed, and the father was the Louisiana resident asking our courts to grant him custody of his child, a Texas domicilary, would a Louisiana court be the proper forum for resolving *574 this custody matter? If that reverse situation were the case, we believe that under Louisiana's Uniform Child Custody Jurisdiction Act Louisiana would not be a proper forum for litigating the custody matter. If this were not so, there would be no case for which the Uniform Child Custody Jurisdiction Act is designed that would accord respect to the domicile state, for all that an asylum state parent would have to do, when the child is physically present in the asylum state during a visitation period, is to charge in the asylum state court that there exists in the domicile state conditions which create an emergency and present an immediate serious question of the child's welfare.[2]
We conclude for the reasons which follow that the Louisiana court has jurisdiction in this matter. Coincidentally, this same result was reached by the Texas Court of Appeals, although for different reasons.
Louisiana has adopted the Uniform Child Custody Jurisdiction Act. (Act. No. 513 § 1, effective Oct. 1,1978). In the Commissioners' Prefatory Note to this Act as it appears in 9 Uniform Laws Annotated, Master Edition, at 111, it is noted:
There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents ... battled over their custody in the courts of several states ...
When a decree has been rendered awarding custody to one of the parties,... those who lose a court battle over custody are often unwilling to accept the judgment of the court. They will remove the child in an unguarded moment or fail to return him after a visit and will seek their luck in the court of a distant state where they hope to findand often do finda more sympathetic ear for their plea for custody.
The Uniform Child Custody Jurisdiction Act was designed to solve the precise problem presented in this case: a Louisiana domiciled mother is asked to answer charges brought in a Texas lawsuit initiated by the Texas father in a Texas district court before her child can be returned to Louisiana at the end of the court ordered thirty day Texas visitation period, where the Texas father has heard during the visit some disconcerting tales of incidents allegedly occurring in Louisiana in the home of the mother and stepfather. Clearly the proper court for deciding the custody ramifications of incidents taking place in a Louisiana home, involving Louisiana domiciliaries, is a Louisiana court.
Louisiana's jurisdiction is clearly set forth in its Uniform Child Custody Jurisdiction Act, La.R.S. 13:1702, which reads as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons; and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or *575 (4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. (Emphasis provided.)
Under R.S. 13:1702(A)(1) and (2), Louisiana is a proper forum, for Louisiana is the home state of the child (Margarita) at the time of the proceeding; Louisiana had been Margarita's home state for more than six months before commencement of the proceeding; she was absent from the state because of her retention by a person claiming custody, and her mother continues to live in Louisiana. (La.R.S. 13:1702(A)(1)). Secondly, it may be said that it is in the best interest of Margarita that a Louisiana court assume jurisdiction because Margarita and her mother have a significant connection with this state and there is available in this state substantial evidence concerning Margarita's present care, protection, training, and personal relationships (La.R.S. 13:1702(A)(2)).
The only statutory provision which might vest jurisdiction in an asylum state is La. R.S. 13:1702(A)(3) which speaks of the child's being physically present in the (asylum) state and there being an emergency situation.[3] However the comments to that paragraph in § 3 Uniform Child Custody Jurisdiction Act, 9 Uniform Laws Annotated, Master Edition 124, which is identical with La.R.S. 13:1702(A)(3) notes that the provision:
retains and reaffirms parens patriae jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection. This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite. This extraordinary jurisdiction is reserved for extraordinary circumstances. See Application of Lang, 9 App.Div.2d 401,193 N.Y.S.2d 763 (1959). When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph. (Emphasis provided.)
We construe this emergency provision as permitting a state, otherwise without jurisdiction over a visiting child or her non-resident mother, to take jurisdiction in a custody matter only if the immediate needs of the child require it because the child has been abandoned or otherwise mistreated, abused, or neglected. The statute contemplates that conditions in the asylum state and the immediacy of those conditions will provide both the necessity and the justification for the asylum state's assuming jurisdiction over a custody matter not otherwise within its province. Such a situation is not presented by Dr. Medellin's petition to the Texas court. We do not construe La.R.S. 13:1702(A)(3) to mean that a child visiting an asylum state may be found to be in an emergency state of mistreatment, abuse, neglect or dependency because of allegations concerning conditions purportedly existing in the home state, conditions more appropriately and conveniently subject to the scrutiny of the courts of the domicile state.[4]
*576 Although the express language of the equivalent Texas emergency provision (Tex. Fam.Code Ann. § 11:045(a)(2)(B) varies from the Louisiana statute (La.R.S. 13:1702(A)(3)), the source reference for both the Texas and the Louisiana statutes is § 3 Uniform Child Custody Jurisdiction Act, 9 Uniform Laws Annotated, Master Edition. Thus the comments appearing there and referred to earlier in this opinion are equally as relevant to the Texas provision.
We conclude that under the Uniform Child Custody Jurisdiction Act, its Louisiana provision La. 13:1702(A)(3), as well as its counterpart Texas provision (Tex.Fam. Code Ann. § 11:045(a)(2)(B) which is similar but not identical with La. 13:1702(A)(3) because Texas has not adopted the Uniform Child Custody Jurisdiction Act), jurisdiction over the custody of the child Margarita does not vest in the Texas courts. There was therefore no jurisdiction in the Harris County, Texas court when, on February 25, 1981, it modified the original decree of the Texas court dated May 26, 1977 by which the then Mrs. Medellin (now Dillon) was awarded custody of her child, Margarita.[5]
When the courts of another state do not meet the jurisdictional requirements of Louisiana law in custody matters, the Louisiana courts need not defer to those courts. As relates to simultaneous proceedings in other states, La.R.S. 13:1705(A) relative to those proceedings recites that Louisiana courts shall not exercise their jurisdiction only if the court of another state is exercising its jurisdiction "substantially in conformance with this Part [La.R.S. 13:1700 et seq.]" (Emphasis provided.) Likewise, La. R.S. 13:1712 relative to recognition of out of state custody decrees states that Louisiana will recognize such a decree of another state only when such decree was rendered by a court of another state "which had assumed jurisdiction ... substantially in conformance with this Part [La.R.S. 13:1700 et seq.]" (Emphasis provided.)
Therefore whether we construe the Texas proceedings as existing simultaneously with the proceedings in the Louisiana courts (La. R.S. 13:1705(A)) or whether we construe the Texas proceedings as having concluded with a modification decree favorable to the father (La.R.S. 13:1712), the exercise of jurisdiction by the Texas courts in either case is not substantially in conformance with Louisiana law as set forth in La.R.S. 13:1700 et seq. The Lafourche Parish district court is not prohibited from exercising its jurisdiction over this custody matter. That Louisiana district court is not required to enforce the modification (favoring the father) of the original 1977 custody decree.
On the other hand under La.R.S. 13:1712, Mrs. Dillon's petition seeking enforcement of the May 26, 1977 custody decree in her favor, one not jurisdictionally suspect as is her ex-husband's later modification decree of February 25, 1981, is statutorily authorized and is subject to the jurisdiction of the Louisiana district court. Dr. Medellin's exception to the jurisdiction of the Louisiana court should not have been sustained.

Decree
The judgments of the Lafourche Parish District Court and the Fourth Circuit Court of Appeal sustaining defendant/respondent's declinatory exception of lack of jurisdiction over the subject matter are reversed. The exception is overruled. Dismissal of Mrs. Dillon's petition is reversed. The case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] La.C.C.P. art. 1391 permits us to take judicial notice of the statutes of every state in the United States. While court opinions are not specifically included in La.C.C.P. art. 1391, we probably could take cognizance of the Texas Court of Civil Appeals opinion both because its existence was tacitly acknowledged by respondent in his failure to protest, and because of the need for an expeditious resolution of the custody/conflicts matter. Nevertheless, it is not necessary that we do so. As will be evident in this opinion hereafter, we resolve this case without relying on any Texas proceeding beyond that of the district court which granted the pro-husband modification decree.
[2] It is noteworthy that there has been no contradictory proceeding by any court concerning the validity of the father's substantive allegations concerning the child's welfare, i.e., marijuana use and "sexual games" in the child's Louisiana environment.
[3] It is significant that physical presence alone is not sufficient to confer jurisdiction. La.R.S. 13:1702(B)
[4] We emphasize that this is a civil custody matter between competing parents. Thus we do not in this opinion address the different statutory provisions which allow the courts of this state upon application of the state to assume immediate jurisdiction for the protection of the child when extraordinary circumstances exist. See generally: La.Code of Juvenile Procedure: La.R.S. 14:74 et seq. "Offenses affecting the Family": and Tex.Fam.Code Ann. § 17:01 et seq. "Emergency Procedures in suit by Governmental Entity," (Vernon, Supp. 1980-81).
[5] As we stated earlier, the Texas Court of Civil Appeals came to much the same conclusion, but for different reasons. They found that although Tex.Fam.Code Ann. § 11.045(a)(2)(B), the emergency provision, might on its face give original jurisdiction to the district court, the jurisdictional provision is nonetheless subject to due process limitations, and due process was offended by requiring Mrs. Dillon under these facts and circumstances to litigate this custody matter in Texas.