516 So.2d 1277 (1987)
Patricia Ann Siwek STUART, Plaintiff/Appellant,
v.
Richard Byron Thomas STUART, Defendant/Appellee.
Richard Byron Thomas STUART, Plaintiff/Appellee,
v.
Patricia Ann Siwek STUART, Defendant/Appellant.
Nos. 19181-CA and 19182-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
*1278 Northwest Louisiana Legal Services by Ross E. Shacklette, Shreveport, for plaintiff/appellant in No. 19181-CA and plaintiff/appellee in No. 19182-CA.
Pat Harrington, Shreveport, for defendant/appellee in No. 19181-CA and defendant/appellant in No. 19182-CA.
Before HALL, C.J., and NORRIS and LINDSAY, JJ.
HALL, Chief Judge.
In this child custody action the mother, Patricia Ann Siwek Stuart, appeals the trial court's awarding of custody of their two minor children to the father, Richard Byron Thomas Stuart, as sole custodial parent. The issue to be decided on appeal is whether the trial court properly exercised jurisdiction under the Uniform Child Custody Jurisdiction Act, LSA-R.S. 13:1700 et seq. We find that the trial court had emergency jurisdiction under LSA-R.S. 13:1702(A)(3), affirm the judgment changing custody to the father but modify the judgment to make it temporary pending further proceedings, and remand the case for further proceedings.
The parties are former husband and wife who were divorced in Bossier Parish, Louisiana *1279 on May 17, 1984. At that time the parties were awarded joint care custody and control of the minor children with Mrs. Stuart being designated the primary residential custodian of the minor children, Angelique Christine Stuart born December 6, 1972, and Byron Thomas Stuart born March 9, 1979, with Mr. Stuart having physical custody for a period of two months each summer. Mrs. Stuart was also awarded the sum of $400.00 per month in child support. Mrs. Stuart and the children moved to the state of Washington in 1984 and resided there until June 28, 1986, when the children came to Louisiana to visit their father pursuant to the visitation schedule.
On August 6, 1986, after having the children evaluated by a clinical social worker, the father filed a rule for sole custody alleging numerous acts of neglect and mistreatment on the part of Mrs. Stuart. Mrs. Stuart filed an exception of lack of jurisdiction. Evidence was adduced on August 28, 1986, after which the exception was referred to the merits and the rule was then continued until October 23, 1986. The matter was not heard until January 12, 1987. At that time, the trial court determined that due to evidence adduced at the first hearing emergency jurisdiction existed under LSA-R.S. 13:1702(A)(3). The case proceeded to trial on the merits of the petition to change custody.
At the trial on the merits, Mr. Stuart, the clinical social worker and Angelique Stuart testified. Mrs. Stuart, although represented by counsel, was not present. Counsel stated that she was prevented from coming to Louisiana or being present due to her financial condition. After trial, the trial court found that an emergency situation existed since the mother was intoxicated on a daily basis to such a degree as to not be able to care for her children and that the children had been mistreated and neglected. The court then determined that it is was in the best interest of the children to change the children's custody from Mrs. Stuart to Mr. Stuart. Mrs. Stuart was given reasonable visitation rights under supervision by a responsible party to make sure she was not intoxicated during visits.
The Uniform Child Custody Jurisdiction Act, LSA-R.S. 13:1700 et seq., was promulgated to avoid jurisdictional competition and conflict, promote interstate cooperation, litigate custody where the child and family have the closest connections and where significant evidence concerning the child is most readily available, discourage continuing conflict over custody, deter abductions and unilateral removals of children, avoid relitigation of another state's custody rulings, and promote the exchange of information and mutual assistance between different states. Peery v. Peery, 453 So.2d 635 (La.App. 2d Cir.1984); Gay v. Morrison, 511 So.2d 1173 (La.App. 4th Cir. 1987).
In determining whether Louisiana courts have jurisdiction, it is crucial that each of the multi-faceted components of the Act be construed to promote its general purposes. Ingram v. Ingram, 463 So.2d 932 (La.App. 2d Cir.1985). The primary concern, as always, is the best interests of the child. Schroth v. Schroth, 449 So.2d 640 (La.App. 4th Cir.1984); Gay v. Morrison, supra.
For a court of this state to make a custody determination either initially or through modification there must be a jurisdictional basis under LSA-R.S. 13:1702, which provides:
"A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction *1280 because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he had been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
The Uniform Child Custody Jurisdiction Act has two paramount purposes: (1) avoiding jurisdictional competition among the states and (2) promoting resolution of custody disputes by the forum deemed most likely to have the maximum amount of relevant information about the case. McGough and Hughes, Charted Territory: The Louisiana Experience with the Uniform Child Custody Jurisdiction Act, 44 La.L.Rev. 19 (1983). The Act utilizes a scheme of potentially concurrent jurisdiction. This scheme recognizes that the proper forum to exercise jurisdiction should have "maximum" rather than "minimum" contacts with the family.
It has been suggested that jurisdiction is arranged in descending preferential order. Snider v. Snider, 474 So.2d 1374 (La.App. 2d Cir.1985); Schroth v. Schroth, supra. The "home state"[1] is the preferred jurisdiction. Implicit in the Act's rank-order design is the presumption that a child's best interests will ordinarily be served by the assumption of jurisdiction by his home state. 44 La.L.Rev. at 29; LSA-R.S. 13:1702(A)(1). Next in rank is the "significant connection" jurisdiction. LSA-R.S. 13:1702(A)(2). "Emergency jurisdiction" is then provided for in LSA-R.S. 13:1702(A)(3). Finally, there is the "residual" category which applies when no other state would have jurisdiction under the above sections or when another state has declined jurisdiction. LSA-R.S. 13:1702(A)(4).
There is no doubt that the state of Washington is the "home state" within the meaning of the Act. The children lived in that state with their mother from at least May of 1984 until June of 1986. Accordingly, the Louisiana court does not have "home state" jurisdiction.
Nor does the Louisiana court have "significant connection" jurisdiction. The children and their mother had lived in Washington for more than two years. All of the allegations on which the petition for change of custody are based relate to the children's home life and treatment while living with their mother in Washington. A Washington court would have optimum access to available evidence concerning the children's family life with their mother. The only significant connection remaining *1281 with Louisiana is the fact that the father and other relatives reside in this state. A number of Louisiana cases have held under similar facts that jurisdiction shifts from the Louisiana court which rendered the original custody decree to the home state and that Louisiana courts do not have jurisdiction or should defer to the home state's jurisdiction. See Counts v. Bracken, 494 So.2d 1275 (La.App. 2d Cir.1986); Wagner v. Wagner, 482 So.2d 780 (La.App. 4th Cir. 1986) writ denied 487 So.2d 441 (La.1986); Fouchi v. Fouchi, 477 So.2d 752 (La.App. 5th Cir.1985) writ denied 481 So.2d 634 (La.1986); Fredericks v. Fox, 457 So.2d 1267 (La.App. 1st Cir.1984); and Schroth v. Schroth, supra. See also Moore v. Moore, 379 So.2d 1153 (La.App. 2d Cir.1980). Compare Revere v. Revere, 389 So.2d 1277 (La. 1980) which had distinguishing facts supporting "significant connection" jurisdiction.
The issue in this case, then, is whether the trial court had emergency jurisdiction under the Act. Appellee argues that an emergency situation existed in Washington and that the trial court was correct in exercising jurisdiction in Louisiana while the children were present here. Appellant argues that no true immediate emergency existed and that the trial court did not have emergency jurisdiction under the Act.
Emergency jurisdiction under LSA-R.S. 13:1702(A)(3) is reserved for extraordinary circumstances. Dillon v. Medellin, 409 So. 2d 570 (La.1982). The comments to that paragraph in § 3 Uniform Child Custody Jurisdiction Act, 9 U.L.A. 122 (1968), which is identical with Section 1702(A)(3) notes that the provision:
"[R]etains and reaffirms parens patriae jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection. This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite. This extraordinary jurisdiction is reserved for extraordinary circumstances. See Application of Lang, 9 App.Div.2d 401, 193 N.Y.S.2d 763 (1959). When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph. (emphasis added)"
To confer jurisdiction otherwise lacking, there must be a showing of immediate emergency such as abandonment, mistreatment, abuse or neglect. Dillon v. Medellin, supra; Gibson v. Gibson, 429 So.2d 877 (La.App.3d Cir.1983).
In Dillon v. Medellin, supra, the court held:
"We do not construe LSA-R.S. 13:1702(A)(3) to mean that a child visiting an asylum state may be found to be in an emergency state of mistreatment, abuse, neglect or dependency because of allegations concerning conditions purportedly existing in the home state, conditions more appropriately and conveniently subject to the scrutiny of the courts of the domicile state."
In Burr v. Boone, 477 So.2d 692 (La. 1985), relied on by the trial court in the instant case, the Louisiana Supreme Court may have backed away somewhat from the holding in the Dillon case. In a per curiam opinion the court held that the trial court had jurisdiction under LSA-R.S. 13:1702(A)(3) "which grants jurisdiction to Louisiana courts in change of custody cases when the child in question is physically present in this state and has been subjected to mistreatment or abuse which necessitates the exercise of emergency jurisdiction." The court distinguished "the hypothetical situation described by [the] court in dicta" in Dillon, finding that a prima facia case supporting exercise of emergency jurisdiction was established, corroborated by a Louisiana Department of Health and Human Resources' investigation of alleged sexual abuse. No further facts were given in the brief opinion.
On the evidence presented in the instant case the trial court did not err in assuming and exercising emergency jurisdiction.
*1282 The evidence, consisting almost entirely of the testimony of 14-year old Angelique, established that Mrs. Stuart is an alcoholic, drinking to the point of intoxication when she gets home in the evening on a daily basis. She did not get up in the morning, thus, requiring the children to dress themselves, prepare breakfast and get off to school by themselves. Although purporting to work most days at a real estate agency, she apparently earned no income. She would borrow Angelique's baby sitting money which the daughter used to wash the laundry. She used foul language toward the younger child and would not allow the children to attend church. She came home anywhere from 6:00 p.m. to midnight, leaving the children by themselves until she arrived, and then started drinking. The children usually had to prepare their own meals, had very little food in the house, and occasionally ate with their grandmother who moved to Washington only shortly before the children came to Bossier Parish. Mrs. Stuart, although unaware of the children's presence, would talk of suicide and how, if she could, kill Mr. Stuart. There was some evidence, albeit minimal, of physical abuse of the children by the mother. Mr. Haycock, a clinical social worker who interviewed the children shortly after they came to Louisiana, found them to be in a stressful state. He believed Angelique's description of conditions with the mother in Washington and believed conditions were bad enough to warrant a report to the local child protection agency, which he made but had heard nothing from.
It would have been a mistake under these circumstances for the trial court to have rejected jurisdiction and to have dismissed the petition for change of custody with the result that the children would have been returned to live with their mother under the conditions noted. Living with their mother under these conditions presented an immediate danger to the children's health and welfare.
Dicta in the Dillon case is to the effect that emergency conditions must exist in the asylum state, Louisiana here, in order to support emergency jurisdiction under the Act. This position has been adopted by some other states, notably Florida in Nelson v. Nelson, 433 So.2d 1015 (Fla.App. 3rd Dist.1983), which cited Dillon. This concept may have been rejected in Burr v. Boone, supra, but the facts of that case are not clear. In any event, we do not regard Dillon as binding authority on the issue. The better view, we believe, is that an emergency situation existing in the home state which presents an immediate need for protection of the children can support emergency jurisdiction under the Act in the asylum state when the child is present in the asylum state.
Assumption of emergency jurisdiction for the protection of the child does not, however, necessarily mean that the court should proceed with a final determination of a change of custody without first pursuing procedures available and provided for in the Act. Emergency jurisdiction should be exercised only in accordance with the scheme and purposes of the Act. The home state remains the preferred jurisdiction. The court should make a determination under the Section 1706 criteria as to whether jurisdiction should be declined because another state is a more appropriate forum. Applying those criteria to the instant case indicates that Washington would be a more appropriate forum because it is the children's home state, it has a closer connection with the children and the mother with whom they were living and substantial evidence is more readily available concerning the children's present and future care, protection, training and personal relationship.
However, before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties. Section 1706(D). Upon finding *1283 that a court of another state is a more appropriate forum, the court is authorized by Section 1706(E) to stay the proceedings here upon the condition that a custody proceeding be promptly commenced in another state, and upon "any other conditions which may be just and proper."
Sections 1717 and 1718 provide for the parties or the court to direct the taking of testimony in another state. The court can request the court of another state to hold a hearing and take evidence, or to have social studies made. Sections 1718(B) and 1710 authorize the court to obtain the appearance of a party and to require the other party to pay travelling expenses.
In this case the trial court properly assumed emergency jurisdiction. Under that jurisdiction the court was justified under the evidence presented in modifying the previous custody judgment at least temporarily in order to protect the children and to pursue the other procedures provided for in the Act. However, the court erred in proceeding to render a final judgment changing custody without first pursuing those available procedures. Emergency jurisdiction should be used sparingly, and then in keeping with the scheme of the Act that prefers home state jurisdiction, the forum which usually has the optimum contact with the children and where evidence is most available.
We are troubled in this case by the one-sided evidence presented, consisting almost exclusively of the testimony, albeit impressive and seemingly reliable, of the 14-year old daughter. We are likewise troubled, however, as was the trial judge, by the fact that the mother, over the several months while the action was pending in the trial court, did not appear or seemingly make any effort to refute the allegations made against her. There was evidence that she did not send the children Christmas presents, only called once or twice, and did not send their clothes, having sold some of them.
We note also that this case is being reviewed on appeal almost a year and a half after the children left Washington and came to Louisiana. Section 1723 of the Act provides that upon the request of a party, where issues of the existence or exercise of jurisdiction are raised, the case shall be given calendar priority and handled expeditiously. Apparently no such request was ever made in this case and this matter has been pending in the trial and appellate courts far too long.
The delay makes it even more difficult to fashion the proper remedy in this case where, on the evidence presented, a change of custody seems clearly in the best interest of the children, but where jurisdiction, although correctly assumed, was exercised in a manner inconsistent with the scheme and purposes of the Act and without utilization of the procedures provided for in the Act which are designed to make the scheme workable.
All things considered, it is our conclusion that the judgment awarding custody to the father under the emergency jurisdiction of the trial court should be affirmed but modified to be made temporary pending further proceedings, and that the case should be remanded to the trial court for further proceedings in accordance with the Act.
For the reasons assigned, the judgment of the district court changing custody under its emergency jurisdiction is affirmed, but is made temporary pending further proceedings as hereinafter set forth. The case is remanded to the district court with the following instructions:
1) A determination as to whether to decline jurisdiction should be made under Section 1706;
2) Before making that determination, the court should communicate with the Washington court which would have jurisdiction of this matter as provided in Section 1706(D);
3) If the district court should find that it is an inconvenient forum and that a Washington court is a more appropriate forum, this proceeding should be stayed upon condition that a custody proceeding be promptly commenced in Washington, *1284 and upon any other conditions the court considers proper, such as continuation of the change of custody judgment rendered under its emergency jurisdiction until the Washington court has exercised jurisdiction and made a custody determination; and
4) If the district court retains jurisdiction or the Washington court declines jurisdiction, the district court should, in its discretion, pursue procedures available under the Act to develop optimum evidence concerning the past, present and future care of the children, such as obtaining the presence of the mother at any future hearing, providing for payment of her travel expenses by the father, directing the taking of testimony in Washington, requesting a Washington court to hold a hearing or to have social studies made, or such other procedures as may be available under the Act.
Costs of this appeal are assessed to Mr. Stuart.
Affirmed in part, modified and remanded.
NOTES
[1] LSA-R.S. 13:1701(5):

"`Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."