580 So.2d 945 (1991)
Everett Dana RENNO and Brenda Evans Renno, Plaintiffs,
v.
Charles Neil EVANS and Teresa M.D. Evans, Defendants.
No. 22176-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*946 John M. Robinson, Springhill, for appellees E.D. and B.E. Renno.
Sir Clyde Lain, II, Monroe, for appellant Teresa M.D. Evans.
Before SEXTON, LINDSAY, HIGHTOWER, VICTORY and BROWN, JJ.
HIGHTOWER, Judge.
This is an appeal by a mother from the awarding of custody of her child to the minor's paternal aunt and uncle. Examining jurisdiction sua sponte and concluding *947 that the trial court had emergency jurisdiction under the Uniform Child Custody Jurisdiction Act, we modify the judgment by making the award temporary and remand with instructions.

BACKGROUND
Apparently both Charles Neil Evans and Teresa M.D. Evans, the parents of Charles E.R. Evans ("Chase"), have resided in Michigan since sometime in 1988. Incident to a divorce decree on January 8, 1985, an Arkansas court awarded custody of the minor to the mother. The present proceeding began on September 26, 1989, when the paternal aunt and uncle filed suit in Webster Parish seeking custody. Pursuant to an interim order dated October 13, 1989, they obtained provisional custody. Later, following a hearing on rule, the court made that award permanent.
Plaintiffs, Everett D. Renno and his wife, Brenda Evans Renno, resided together in Louisiana less than three months before filing their petition. They made both parents party to the suit, but the father, who remained in jail in Michigan in connection with the alleged kidnapping of the minor, neither answered nor appeared at the hearing. Although held open for his deposition, the record fails to contain his testimony. The mother maintained that he committed an act of parental kidnapping to bring the child to Louisiana.
With respect to the minor's care from 1985 until the initiation of the present litigation, the record reveals conflicting testimony. Appearing without counsel, the mother denied assertions that the paternal grandparents, and later the plaintiffs, provided for the boy's care practically all of his life. Instead, she recounted that her son only visited her ex-husband's parents at irregular intervals: two months in 1987; some thirty-five days in October and November, 1988; thirty days in March and two weeks at the beginning of April 1989; and, finally, from July 24, 1989 until the filing of the present suit, after her former husband left Michigan with the youngster.
Plaintiffs, however, presented a different account of the whereabouts of Chase during that period of time. Although precise dates could not be recalled, the child's paternal grandparents, residents of Arkansas, indicated that the boy had principally resided with them before their daughter and her husband, the plaintiffs, assumed his care. Both plaintiffs, especially Mrs. Renno, gave a similar version of the circumstances that arose, starting in June 1988. More specifically, she remembered the child being at his paternal grandparents' home throughout October 1988, except for spending his birthday with his parents in Michigan; recalled that, after spending Christmas 1988 with his parents, he came back to the grandparents' home in January 1989 and stayed there until March; recollected that he returned from Michigan to the Arkansas residence of the grandparents later in the year, but spent weekends with plaintiffs in June, 1989, before again leaving for Michigan after July 4; and stated that he finally returned permanently from that state around July 24, 1989.
Testimony also related to allegations that the child would suffer a detrimental effect if returned to the mother. Plaintiffs stated, as did the paternal grandparents, that she maintained an unsanitary and unhealthy environment at her residence. From outward appearances, according to these witnesses, her children received improper hygiene, nourishment, and clothing. On the other hand, the mother specifically denied all these assertions.
The district court concluded, "It would be detrimental and outright dangerous to the minor to place custody of him with the mother." In a written opinion, the trial judge noted that the child's best interest would be served through placement with the plaintiffs, in that the mother had not provided a stable and healthy environment.

DISCUSSION
It is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Indeed, consent of the parties cannot confer such jurisdiction and a judgment rendered by a court lacking proper legal power is void. LSA-C.C.P. Art. 3.
*948 The jurisdictional limitations imposed by the Uniform Child Custody Jurisdiction Act, LSA-R.S. 13:1700 et seq., are equivalent to declarations of subject matter jurisdiction. Counts v. Bracken, 494 So.2d 1275 (La.App. 2d Cir.1986). That statute has two paramount purposes: (1) avoiding jurisdictional competition among the states and (2) promoting resolution of custody disputes by the forum deemed most likely to have the maximum amount of relevant information about the case. McGough and Hughes, Charted Territory: The Louisiana Experience With The Uniform Child Custody Jurisdiction Act, 44 La.L.Rev. 19, 28 (1983-1984). Each component of the Act should be construed to promote these goals. Stuart v. Stuart, 516 So.2d 1277 (La.App. 2d Cir.1987); Ingram v. Ingram, 463 So.2d 932 (La.App. 2d Cir.1985).
In setting forth the jurisdictional authority and limitations of the UCCJA, LSA-R.S. 13:1702 provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
Jurisdiction under the statute, it has been suggested, is thus listed in order of descending preference. Stuart, supra; Snider v. Snider, 474 So.2d 1374 (La.App. 2d Cir.1985), writ denied, 478 So.2d 903 (La.1985); Schroth v. Schroth, 449 So.2d 640 (La.App. 4th Cir.1984). Hence, the most favored jurisdiction is the "home state," defined by LSA-R.S. 13:1701(5) as the state in which the child lived with his parents, a parent, or a person acting as a parent for at least six consecutive months immediately preceding commencement of the action.
Second in preferential rank is "significant connection" jurisdiction. According to the Comments to Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1968), the purpose of § 1702 A(2) is to limit jurisdiction, not proliferate it. The interest of the child, not merely the convenience of the parties, should be served. Such a forum must have optimum access to relevant evidence about the child and family. Thus, only when maximum, rather than minimum, contact exists should a state assume jurisdiction under this grant of authority. See Counts, supra; Moore v. Moore, 379 So.2d 1153 (La.App. 2nd Cir. 1980).
*949 Emergency jurisdiction, third in line, is reserved for extraordinary circumstances and exists only if required by the immediate needs of the child due to abandonment, mistreatment, abuse, or neglect. Dillon v. Medellin, 409 So.2d 570 (La. 1982); Stuart, supra. Comments to Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 145 (1968), note that a paragraph identical to LSA-R.S. 13:1702 A(3):
retains and reaffirms Parens Patriae jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection. This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite. This extraordinary jurisdiction is reserved for extraordinary circumstances. See Application of Lang, 9 App.Div.2d 401, 193 N.Y.S. 2d 763 (1959). When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph.
(Emphasis added).
At one point, substantial jurisprudential uncertainty arose concerning conditions required for the application of § 1702 A(3). Dillon, supra, suggested that the mistreatment, abuse or neglect must exist in the asylum state, Louisiana in our case, to support emergency jurisdiction. Subsequently, however, Burr v. Boone, 477 So.2d 692 (La.1985), deemed the provision applicable when "the child is physically present in this state and has been subjected to mistreatment or abuse which necessitates the exercise of emergency jurisdiction," and "a prima facie case supporting the exercise of jurisdiction has been established." Interpreting Burr as a possible retreat from Dillon, this court later held LSA-R.S. 13:1702 A(3) jurisdiction appropriate if emergency conditions existing in the home state presented an immediate need for protection of the child. Stuart, supra.
Kelly v. Gervais, 567 So.2d 593 (La. 1990), adopted that view. There, the mother, a resident of Louisiana, alleged that the father, the custodial parent who resided in Canada, mistreated, abused, and neglected the child. Ultimately, in response to the father's exception of jurisdiction, the Supreme Court stated:
The Louisiana court normally would not have jurisdiction based on mistreatment of the child which occurred in Canada. Dillon v. Medellin, 409 So.2d 570 (La. 1982). However, if the situation is so extreme that the immediate safety of the child is threatened by a return to Canada, then the Louisiana court has jurisdiction to take evidence to this limited extent. Stuart v. Stuart, 516 So.2d 1277 (La.App. 2d Cir.1987).
Thus, jurisdiction under the Act can be conferred when the child is present in this state and there exists an emergency situation in the home state necessitating the child's immediate protection.
In the case sub judice, Louisiana clearly is not the child's "home state." Most likely, Michigan retains that status. Although the chronology is unclear, the mother testified that she moved from Arkansas to that state in March 1988. Other statements sequenced the child's next "visit" to Arkansas in October 1988, after the six month period needed to establish Michigan as his home state at that time.[1]
Moreover, although the petition alleged more than one year of physical custody by plaintiffs, the record clearly reflects that such a time span did not elapse in Louisiana, even if one assumes custody as averred. Indeed, not until July 1989 did both spouses live here. As previously defined, the state where the child and those acting as his parents lived for six months, immediately preceding institution of the action, qualifies as the home state. Thus, since plaintiffs did not live in Louisiana for that period before commencing suit on September 25, 1989, home state jurisdiction could not have vested here.
*950 Nor does maximum contact, essential for "significant connection" jurisdiction, exist in Louisiana. Neither natural parent has ever resided in Louisiana, and the paternal grandparents are lifelong Arkansas domiciliaries. Brenda and Everett Renno have each lived in Louisiana for only three and four months, respectively. Such minimal contact does not justify assumption of § 1702 A(2) jurisdiction, considering the purpose of that subsection. Indications of the child's home life and treatment while living with the mother are not readily available in Louisiana, but in Michigan or Arkansas. Obviously, such evidence is relevant to the child's present and future care, treatment and personal relationship. Revere v. Revere, 389 So.2d 1277 (La.1980). Additionally, the record discloses a possible "Welfare Department" investigation and paternal kidnapping charge in Michigan. Thus, with Michigan possessing greater connections, Louisiana's minimal contacts do not warrant § 1702 A(2) jurisdiction in the present proceedings.
Yet, notwithstanding the lack of home state or substantial connection jurisdiction, we feel the evidence supports a finding of emergency jurisdiction in Louisiana. Plaintiffs and the paternal grandparents recounted numerous instances of unsanitary and filthy conditions in the mother's household while she resided in Arkansas. Other statements indicated the mother provided inattentive health care to the child. Other evidence, albeit minimal, also intimated abuse. The record suggests identical conditions in Michigan. To immediately reject jurisdiction would result in dismissal, followed by the return of the child to live with his mother, under whatever conditions exist in her home. That environment perceivably presents an immediate danger to the youngster's health and welfare, although we do not consider the merits of future custody.
The ascertainment of emergency jurisdiction, however, does not terminate our inquiry. If a court of another state has rendered a prior custody decree, as did Arkansas in 1985, the Act limits Louisiana's authority to modify that judgment. LSA-R.S. 13:1713 A. Indeed, if Arkansas retains and has not declined jurisdiction,[2] we should not modify that decree. LSA-R.S. 13:1713 A; Miller v. Miller, 463 So.2d 939 (La.App. 2d Cir.1985).
The question is posed, then, as to whether Arkansas continues to have jurisdictional authority. In our view, home state jurisdiction does not exist there. Indeed, as already noted, Michigan likely holds that status, if any state does. A closer question, however, concerns "substantial connection" jurisdiction.[3] Arkansas has connections through (1) the paternal grandparents, who live there and have cared for the child for significant periods, and (2) the fact that the child previously resided with his mother in that state before her relocation to Michigan. These factors, however, are not sufficient to meet the maximum contacts requirement.[4] By far the great majority of evidence concerning this child is available in Michigan, where both parents apparently still reside.
Nevertheless, despite determinations that emergency jurisdiction subsists in Louisiana and that the Arkansas decree does not now serve to preclude modification, our courts should not proceed to a final determination of custody until those procedures provided by the Act have been explored. See Stuart, supra. If another *951 state is a more appropriate forum, jurisdiction should be declined. LSA-R.S. 13:1706; Stuart, supra; Snider, supra; Miller, supra. In making that decision, certain factors listed in LSA-R.S. 13:1706 C for consideration are:
(1) If another state is or recently was the child's home state.
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes [of the UCCJA].
Application of such guidelines here establishes Michigan as the preferable forum. That state appears to be or have been the child's home state, both parents apparently reside there, and clearly evidence concerning the child's present and future care, protection, training and personal relationships is more readily available there.
However, before declining or retaining jurisdiction, a tribunal should communicate with the court of another state and exchange information pertinent to assumption of jurisdiction by either court. Such a process is intended to guarantee not only exercise of jurisdiction by the more appropriate court, but also that a forum will be available to the parties. LSA-R.S. 13:1706 D. Another provision authorizes staying of proceedings upon condition that a similar one be commenced in another named state and upon "any other conditions which may be just and proper." LSA-R.S. 13:1706 E. Other procedural devices provide for requesting that another state take testimony, hold a hearing to adduce evidence, or make social studies with respect to custody. LSA-R.S. 13:1717, 1718.
None of these procedures, all accessible to the trial judge, were utilized. Furthermore, to proceed to render a final judgment in such a manner constituted error. Emergency jurisdiction should be used sparingly. Yet, since that jurisdiction existed as shown heretofore, the determination of the district court is affirmed but modified to a temporary decree that will control while other procedures are expeditiously pursued. The case is thus remanded to the trial court.

CONCLUSION
For the reasons assigned, the judgment of the district court concerning custody is affirmed but made temporary. The case is remanded to the district court with the following instructions: (1) Determine whether jurisdiction should be declined pursuant to LSA-R.S. 13:1706; (2) in making that determination, communicate first with the Michigan court which appears to have jurisdiction of this matter as provided in LSA-R.S. 13:1706 D; (3) in accordance with LSA-R.S. 13:1706 E, upon finding Louisiana to be an inconvenient forum and Michigan more appropriate, this proceeding should be stayed upon condition that a custody action be promptly commenced in Michigan, and upon any other conditions deemed proper, such as continuation of the change in custody until such time as Michigan has exercised jurisdiction and made a final determination; and (4) if the Michigan court declines jurisdiction and the district court retains authority, all appropriate procedures available under the Act should be pursued to develop maximum evidence concerning the past, present and future care of the child, such as directing that testimony be taken in Michigan, or requesting a Michigan court to hold a hearing or have a social study made. Contact with Arkansas, for similar evidence, may likewise be necessary and appropriate in the event of the Michigan court declining jurisdiction.
Costs of this appeal are assessed to plaintiff.
AFFIRMED IN PART, MODIFIED AND REMANDED.
SEXTON, J., dissents and assigns written reasons.
VICTORY, J., dissents for the reasons assigned by J. SEXTON.
*952 SEXTON, Judge, dissenting.
I agree with the majority that it is appropriate that the jurisdiction of this state be invoked under the emergency jurisdiction aspects of the UCCJA because of the mother's parental inability. However, I believe the majority errs in determining that Michigan is the apparent home state where "the great majority of evidence concerning this child is available," and further errs in directing the trial court to contact the appropriate Michigan court.
LSA-R.S. 13:1701(5) defines a home state as the state where the child has lived with his parents, a parent, or a person acting as parent for six months prior to the filing of the instant action.
A brief review of the history of where the child has resided since his birth in Arkansas on October 13, 1984, is appropriate. Subsequent to his parents' divorce in Arkansas in January of 1985, his mother was given custody. She moved to Michigan with the child in March of 1988 when he was three and one-half years old. He spent some period of time between March 1988 (the date of the move to Michigan) and September 1, 1988 (a date which the record clearly discloses that the child was in Arkansas) in Arkansas. The exact period is unclear from the record. The record is clear, however, that from September 1, 1988, until returned to Arkansas by his father[*] on July 24, 1989, a period of eleven months, the child was in Arkansas at least seven and one-half months (probably closer to eight and one-half months). The child lived in Louisiana for three to four months prior to the instant action, having moved here from Arkansas with the petitioners.
I therefore suggest that on this record it is very difficult to determine that Michigan is the child's home state as defined by LSA-R.S. 13:1701(5). It seems clear that from March 1988 through July 24, 1989 (a period of about 17 months), the child spent at least half, and probably more, of the time in Arkansas. It appears unlikely that he was in Michigan for at least six consecutive months.
More importantly, Arkansas seems to be the state with the maximum contact. Thus, it probably does not matter if Michigan is the home state because Arkansas appears to have the maximum amount of relevant information pertaining to the child. The Louisiana Supreme Court has recognized that under the UCCJA, jurisdiction may exist in two different states under the home state and the significant connection standards. In that case, it is not necessary that the significant connection state always defer to the home state. The reason for deference is that the home state usually is in the best position to judge the case. Revere v. Revere, 389 So.2d 1277 (La.1980).
I am therefore at a loss to understand the majority's rigid adherence to the descending order of jurisdiction per LSA-R.S. 13:1702. Revere points out that we are not bound to such rigid adherence. Moreover, one of the two paramount purposes of the UCCJA is to resolve custodial disputes in "the forum deemed most likely to have the maximum amount of relevant information about the case." Stuart v. Stuart, 516 So.2d 1277, 1280 (La.App. 2d Cir.1987). That forum is probably Arkansas, but the trial judge should make that determination.
Therefore, in my view the appropriate disposition is to remand to the trial court to first determine whether Michigan is the home state. If the trial court determines that Michigan is not, it should then communicate with the appropriate Arkansas court. If, on the other hand, the court finds Michigan is the home state, then it should determine whether Michigan or Arkansas is the state with the maximum contacts with the child and, after making that determination, communicate with the appropriate state court.
I therefore respectfully dissent.
NOTES
[1] Temporary absences from Michigan would have been counted in establishing the necessary accrual of six months. LSA-R.S. 13:1701(5).
[2] LSA-R.S. 13:1713 A requires that the other state must have jurisdiction under prerequisites substantially in accordance with the Act. Arkansas has adopted such laws. See ARK.CODE ANN. §§ 9-13-201 to -227 (1987).
[3] Of course, had the district court communicated with the Arkansas forum, a formal declination of jurisdiction likely could have been obtained. Although such a procedure is not officially mandated, it has been suggested as an efficient approach. See McGough and Hughes, Charted Territory: The Louisiana Experience with the Uniform Child Custody Jurisdiction Act, 44 La.L.Rev. 19 (1983).
[4] Indeed, the Comments that explain the identical modification provision appearing in Uniform Child Custody Jurisdiction Act § 14, 9 U.L.A. 292 (1968), indicate modification jurisdiction should shift elsewhere when all persons involved have moved away or contact with the state has become slight.
[*] In each case, other than on July 24, 1989, it appears that he was brought to Arkansas by his mother.